GIANAKOS, EX'R, Etc. *v.* MAGIROS, Etc.

[No. 231, September Term, 1964.]

*Decided March 30, 1965.*

The case was argued before HAMMOND, HORNEY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Konstantine J. Prevas* for appellant.

*Melvin J. Sykes,* with whom was *William G. Kemp* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This is the second case which has come before us involving the affairs of the late George Magiros (George), of Elkton.

George was born in Greece and emigrated to the United States in 1910. In 1916, he married his first wife by whom he had three children, Thomas, John and Peter. George's first wife died in 1931. In 1933, he settled in Elkton with Thomas and John and engaged in the restaurant business on Route 40. In January, 1951, he married his second wife, Sophie. George died intestate on April 6, 1961. Sophie died on September 9, 1962, leaving a will under which John C. Gianakos was named Executor. In November, 1950, when he was fifty-nine years of age, and a few months before his second marriage, George had executed deeds of real estate to his sons. By one of these deeds, he conveyed the real estate on which the restaurant property in Elkton was located to Thomas and Peter, reserving unto himself a life estate with general power of disposition. Sophie, George's second wife, brought a Bill which sought to set the deeds aside. On Sophie's death, her Executor was substituted in her place as plaintiff. In *Gianakos, Executor v. Magiros*, 234 Md. 14, 197 A. 2d 897 (1964), this Court affirmed the order of the lower court holding that there was no basis upon which George's deeds to his sons should be set aside.

At the time of George's death, he and Thomas were partners in the restaurant business in Elkton. Thomas was appointed administrator of George's estate in the Orphans' Court of Cecil County several days after George's death. Neither George's widow nor Mr. Gianakos, who was then her lawyer, had any knowledge of the extent of George's interest in the partnership, or the value of the partnership; Mr. Gianakos inquired of William G. Kemp, Esq., attorney for Thomas, as to these and other matters and was advised by Mr. Kemp that the partnership was under an oral agreement with each party having a fifty per cent interest. There was some delay in filing the formal appraisal in the Orphans' Court because of problems in evaluating certain assets, but in June, 1962, Mr. Kemp wrote Mr. Gianakos, giving the appraised value of the restaurant assets. A one-half interest in these partnership assets, at the values set by the Orphans' Court appraisers, which were the same valuations sent by Mr. Kemp to Mr. Gianakos, were filed in the inventory of the assets of George's estate in the Orphans' Court.

Upon George's death, Thomas closed the books of the part-

nership and has since conducted the restaurant as an individual proprietorship. He has at all times admitted his obligation to account to George's estate as a creditor for the amount of George's one-half interest in the partnership. Pursuant to the advice of his counsel, Mr. Kemp, Thomas made renovations and repairs, at his own expense, after George's death, without seeking the prior consent of or ratification from Sophie or her Executor. Exceptions to the Orphans' Court appraisals were filed but neither the Orphans' Court appraisals nor the exceptions have been made part of the record in this case.

Shortly after George's death, Thomas made various withdrawals and replacements in connection with the interest of George's estate in the partnership account. These transactions were all made upon the advice of Mr. Kemp and will be referred to hereafter. In January, 1963, Mr. Gianakos, as Sophie's Executor (the Executor) filed suit against Thomas individually and in September, 1963 amended the Bill to include Thomas as George's administrator. In his amended Bill, the Executor asked that he have an accounting of the partnership assets; that he be permitted to elect between the profits of the partnership earned after George's death or the interest on George's capital account from his death; that a receiver be appointed to take over the partnership assets for purposes of final disposition; that an order be passed ordering the sale of all partnership assets by such receiver; and for other relief. Thomas answered the amended Bill and denied that the Executor was entitled to any of the relief prayed.

Testimony was duly taken. During the proceedings below, the Executor testified that Mr. Kemp, as counsel for Thomas, had never refused to give the Executor anything he asked for in the nature of records or copies of the partnership affairs. Counsel for the Executor stated to the court below that he was not asking for the removal of Thomas as administrator of George's estate. During the discussion, the Executor's counsel also stated that he did not maintain that there was any criminality, intentional wrongdoing or any malice in Thomas' conduct in any respect, although, in his brief, the Executor contends that this statement was only made in connection with the discussion as to the removal of Thomas as administrator. The court

found that the Executor was not entitled to any relief and dismissed the Bill. It is from the order of dismissal that this appeal was taken.

I

The court below found that it was entirely proper, under the circumstances, for Thomas to operate the restaurant as an individual proprietorship after George's death, subject only to the admitted obligation to account to George's estate as a creditor for George's interest. The Executor contends that this conclusion was incorrect on the grounds that under The Uniform Partnership Act, Code (1957), Art. 73A (the Act), Thomas as sole surviving partner was under the duty to wind up the affairs of the partnership, and that Thomas, acting as legal representative of the deceased partner, was without legal capacity to elect to stand as an ordinary creditor.

Under the Act, one of the causes of dissolution of a partnership is the death of a partner. § 31. On dissolution, the partnership is not terminated but continues until the winding up of partnership affairs is completed. § 30. On the death of a partner (when he is not the last surviving partner) his right in the specific partnership property vests in the surviving partner. § 25 (2) (d). Under § 37 unless otherwise agreed, the surviving partner has the right to wind up the partnership affairs, provided, however, that any partner or his legal representative, upon cause shown, may obtain winding up by the court. Under § 41 (1), (2) and (3), the surviving partner may continue the business without liquidation of the partnership affairs if he has the consent of the representative of the deceased partner and if there is no agreement to the contrary. The rights of the legal representatives of the deceased partner, in such case, are to have the value of the deceased partner's interest ascertained as of the date of dissolution, which was the date of death of the deceased partner; and to receive that amount as an ordinary creditor.

There was no agreement between the partners, George and Thomas, as to what should happen upon the death of either partner. Thomas, as administrator of George's estate, therefore, by reason of his appointment, had to make the election as to whether the business should be continued by himself in his individual capacity as surviving partner with the interest of

George's estate therein valued as of the date of dissolution; or whether to ask the court to wind up the partnership affairs, in which case, George's estate would receive one-half of the net proceeds of the eventual liquidation.

Absent any breach of fiduciary relationship, it is clear under the Act that Thomas, as surviving partner, had the right to continue the business without liquidation of the partnership affairs, under Section 41 (2) of the Act,[1] with his own consent as representative of the deceased partner (George's estate of which Thomas was administrator) ; that such consent was given, although not in formal terms, by Thomas as administrator to Thomas as surviving partner; that by virtue thereof, under § 41 (3),[2] Thomas, as surviving partner, had the same rights as if a formal assignment had been made; and that, there being no agreement to the contrary, under § 42 of the Act,[3] Thomas'

1. "(2) When all but one partner retire or assign (or the representative of a deceased partner assigns) their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business."

2. "(3) When any partner retires or dies and the business of the dissolved partnership is continued as set forth in paragraphs (1) and (2) of this section, with the consent of the retired partners or the representative of the deceased partner, but without any assignment of his right in partnership property, rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business shall be as if such assignment had been made."

3. "When any partner retires or dies, and the business is continued under any of the conditions set forth in § 41 (1), (2), (3), (5), (6), or § 38 (2) (b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by § 41 (8) of this article."

rights as George's administrator were to receive as an ordinary creditor the value of George's interest in the dissolved partnership, with legal interest, or at Thomas' option, as George's representative, instead of interest on the claim, the profits attributable to the use of the right of George's estate in the property of the dissolved partnership. Sykes, *Probate Law & Practice* (1956), § 553.

The Executor contends that the provisions of the Act to which reference has been made do not apply because they are predicated upon the continuance of the business. He argues that Thomas did not continue the partnership business because he closed out the partnership books and operated the business as an individual proprietorship subject to the obligation as surviving partner to account to George's estate as creditor for George's one-half interest in the dissolved partnership. However, the Act does not require that the business be continued as a partnership. The statutory reference to continuation of the business, under the circumstances, clearly refers to continuation of the business by the survivor in his own right. Under the provisions of the Act, Thomas, as administrator of George's estate, consented to the continuation of the business of the dissolved partnership and, therefore, Thomas, as the legal representative of George's estate, had the right to have the value of George's one-half interest ascertained at the date of dissolution, and to receive the amount thereof as an ordinary creditor, unless he was precluded from exercising the choice which the statute gives because of his dual relationship as administrator and surviving partner.

It is this choice which Thomas made as administrator of his father's estate which the Executor claims he did not have the right to make. Apart from the provisions of the Act which by its terms, as has been seen, gives the administrator of an estate the right to make the election here considered, the Executor claims that under general equitable principles Thomas was precluded from taking any action in which the interest of the beneficiaries under his position as administrator and his own personal interest as surviving partner may conflict.

There is no equitable principle more firmly established in our jurisprudence than that a fiduciary is under a duty of loyalty

186

to his beneficiaries and cannot use the property of a beneficiary for his own purposes. *Maryland Credit v. Hagerty,* 216 Md. 83, 90-91, 139 A. 2d 230 (1958) ; *McLaughlin v. Barnum,* 31 Md. 425, 451 (1869) ; *Restatement, Trusts,* Second, §§ 26, 170; Clapp, *A Fiduciary's Duty of Loyalty,* 3 Md. L. Rev. 221, 227-28 (1939). As to matters within the scope of the relation, he is under a duty not to profit at the expense of the other and not to enter into competition with him without his consent, unless authorized to do so by a proper court or by the provisions under which the relations arise. *Restatement, Trusts,* Second, § 2, Comment b.

In this case, under the Act, it was inherent in Thomas' position as administrator that he elect, for the estate, either to receive the value of George's interest in the dissolved partnership as an ordinary creditor, or under Section 30, to have the partnership continue until the winding up of partnership affairs is completed, with the right to an accounting for the deceased partner's interest, under Section 43. If an administrator is properly appointed by the court having jurisdiction, he is not disqualified by the filing of a personal claim against the estate; nor, as administrator, is he required to avail himself of a defense of limitations against such a claim. *Talbert v. Reeves,* 211 Md. 275, 127 A. 2d 533 (1956) and cases therein cited. By reason of his court appointment, in the absence of proof of wrongdoing, he is authorized to take action which might, under other circumstances, constitute a conflict between his personal position and his fiduciary capacity. He is, of course, liable under his bond as administrator for any breach of his duty in that capacity. In this case, Sophie, the wife, did not protest Thomas' appointment as administrator, and the Executor expressly disclaims any request for his removal. No intentional wrongdoing by Thomas is claimed.

This case is unlike that in which a trustee voluntarily buys assets of the trust estate. Cf. *Harlan v. Lee,* 174 Md. 579, 199 A. 2d 862 (1938). By virtue of his position as administrator, Thomas was put to an election under the Act. The election was necessary by reason of his position, and the position was not only under court order, but also without objection from the fiduciary during her lifetime or by her Executor after her death.

The attack is made, not because that election was deleterious to George's estate, but merely because it was made. Under these circumstances, the attack must fail.

A case closely in point on the issue here considered is *Blumer Brewing Corp. v. Mayer,* 223 Wis. 540, 269 N. W. 693 (1936). Wisconsin, like Maryland, has adopted The Uniform Partnership Act. In that case, Hugo Einbeck and Charles Einbeck were partners. Hugo Einbeck died and the surviving partner, Charles, was duly appointed administrator of Hugo's estate. As administrator, Charles listed the partnership interest of Hugo in his inventory of Hugo's estate. Charles Einbeck died some years after Hugo and an administrator was appointed for his estate. The appellant was a creditor of the partnership and filed suit against the administrator of Charles' estate and the administrator *de bonis non* of Hugo's estate. The lower court held that Charles, during his lifetime, was without authority to continue the business and that the assets of Hugo's estate were not chargeable with the liabilities of the partnership incurred after his death. The Supreme Court of Wisconsin reversed. It held that, under The Uniform Partnership Act, Charles, as surviving partner, under the circumstances of the case, had authority to continue the partnership business after its dissolution brought about by Hugo's death and that the interest of Hugo's estate in the partnership property was liable for the subsequent debts of the partnership business continued by Charles. In its opinion, the court said:

> "It is considered that under this section it is not necessary for the administrator to be authorized by the court to give his consent. The situation which is dealt with by the statute is one where, with the knowledge and acquiescence of an administrator, the surviving partner is permitted to retain the interest of the deceased partner in the business and to continue it. When that happens, it operates as an assignment of the interest of the deceased partner to the surviving partner or partners. If the statute be not so construed the principal purpose of its framers will be defeated. * * * It is argued that Charles R. Einbeck had no power to

contract with himself in different capacities. It is not considered that what happens in cases of this kind is a matter of contract. It was because there were so many cases in which no contract was made that legal consequences are given to the act of consent by sec. 123.36, Stats. Certainly under the facts of this case the administrator must be held to have acquiesced and consented to the continuation of the partnership business and to the employment of the interest of the deceased partner in that business." 223 Wis. at 547-48.

## II

The Executor contends that he is in any event entitled to an accounting. In support of his contention, he relies upon Section 43 of the Act. This section only provides that the right to an accounting shall accrue to any partner or his legal representative as against the surviving partner continuing the business. The section does not of itself give the right to an accounting to a beneficiary of the estate of the deceased partner. Even where the section applies, we have held that it does not follow that an accounting must be decreed where it will serve no useful purpose. *Metaxa v. Coutros,* 211 Md. 499, 128 A. 2d 273 (1957). However, apart from statute, a court of equity will order an accounting if there has been a breach of confidential relations, or if, upon the facts, legal remedies are inadequate. *Nagel v. Todd,* 185 Md. 512, 517-18, 45 A. 2d 326 (1946) and authorities therein cited.

In this case, Thomas accounted for George's partnership interest by including in the inventory of the assets of George's estate a one-half interest in the partnership assets at the value set by the Orphans' Court appraisers. There is a difference of opinion as to whether the partnership interest of the deceased partner should be accounted for by filing an inventory or a list of debts. *Sykes, op. cit,* Sections 553, 573, states that the interest of the decedent in the co-partnership assets should be included in the list of debts due the decedent. See to the contrary, however, the opinions of the Attorney General of Maryland cited in 10 M.L.E., *Executors and Administrators,* § 70, note 58. In any event, it is the substance, not the form, which is im-

portant. It is undisputed that the interest of George in the partnership assets was included by Thomas in the inventory of George's estate. While exceptions were filed to that account, the record does not disclose what the exceptions were or what the inventory was or, indeed, that the inventory was not correct. The record does affirmatively show that all requests of the Executor to Thomas for information in connection with the partnership business were answered.

It is admitted that the inventory of the partnership assets did not include any item for goodwill. The land on which the partnership restaurant was conducted did not belong to the partnership at the time of George's death but had been validly deeded by George in his lifetime to Thomas and Peter. *Gianakos, Executor v. Magiros, supra.* There was no lease. The business was a comparatively small one, dependent upon the personal services of its owners and managers. There is no evidence that there was any goodwill in which George's estate had an interest.

The Executor contends, in support of his right to an accounting, that the record does not show whether Thomas as administrator under Section 42 of the Act, elected to pay interest on the estate's claim as a creditor of the partnership or, in lieu of legal interest on the claim, to pay the profits attributable to the use of George's rights in the property of the dissolved partnership. In his brief and in the argument before us, Thomas has stated that as administrator he will pay the legal interest. There is no evidence that this election will not be more beneficial to the estate than the alternative payment of a share of the profits.

As another ground for the accounting, the Executor refers to certain of Thomas' actions after George's death. The facts as to these transactions are undisputed. Shortly after George's death, Thomas, on the advice of his counsel, Mr. Kemp withdrew all checking accounts in George's name and put them into an estate account; one such account in the amount of $14,-843.40 was the checking account of the partnership business. Again acting on the advice of his counsel, Thomas withdrew for his own use one-half of the balance of this partnership account in the amount of $7,421.70 from George's estate, early in 1962. Thereafter, upon investigation of the partnership records and income tax returns, Mr. Kemp discovered that, while the final partnership income tax return for the period from Jan-

uary 1, 1961 to the date of George's death, which had been prepared by the partnership accountant, had charged George's capital account for certain sums, these sums had not been actually withdrawn by the time George died. Mr. Kemp accordingly advised Thomas that the money in the partnership account, in his opinion, was George's money rather than partnership money and, on Mr. Kemp's advice, Thomas replaced the $7,-421.70 in the estate. We find nothing in these transactions suggestive in any way of bad faith or which requires further accounting.

The conclusion of the court below that the facts did not justify the Executor's request for a formal accounting is amply supported by the record.

### III

What has been said as to the Executor's request for an accounting is also applicable to his request for appointment of a receiver. Admittedly, the appointment of a receiver in a case of this kind is discretionary with the court. *First Union v. Bottom*, 232 Md. 292, 296-97, 193 A. 2d 49 (1963) and authorities therein cited. The Executor contends that the refusal of the lower court to appoint a receiver in this case was a clear abuse of discretion. We disagree. On the facts as disclosed by the record, we find nothing to indicate that the appointment of a receiver is necessary for the protection of the interests of the parties.[4] There is no showing that George's estate will not receive what may be determined to be due him or that the safety of the estate requires that Thomas as surviving partner be divested of his control of the business. The refusal of the court below to appoint a receiver, in our opinion, was not erroneous but, on the contrary, was justified by the facts in the case.

*Decree affirmed; costs to be paid by the appellant.*

---

4. In support of his contention that a receiver should have been appointed, the Executor cites *Blumer Brewing Corp. v. Mayer*, 223 Wis. 540, 269 N. W. 693 (1936), which has been discussed in connection with the validity of the election made by Thomas as administrator of George's estate. The case is not authority, however, for the appointment of a receiver on the facts here presented. In *Blumer*, suit was brought by a creditor of the partnership and the last surviving partner was deceased.