## Wisocki, Admx. v. Howell

*George S. Black*, for plaintiff.

*Edmund C. Wingerd, Jr.*, and *Edwin D. Strite, Jr.*, for defendants.

DEPUY, P. J., August 27, 1965.—On March 29, 1965, plaintiff-administratrix filed her complaint in equity. She averred that her husband, Joseph Wisocki, died on February 13, 1965; that she qualified before the register here as administratrix on February 25, 1965; that she and the two defendants are residents of this county; that up to the time of her husband's death he and defendants, Howell and Vanderau, were partners in a restaurant and tavern business conducted at Chambersburg under the trade name of Corner Bar and Grill; that her husband had possessed a one-third interest in the said partnership and its assets, which included a certain liquor license issued by the Pennsylvania Liquor Control Board; that since the death of Wisocki, which requires dissolution of the partnership, the two defendants have continued to carry on the partnership business to the exclusion of plaintiff as administratrix of her husband's estate, and that the two defendants, despite demand by plaintiff that they account to her for the partnership business, have failed to do so and have failed to make distribution to the partners in dissolution. . . .

The parties undertook by their written agreement to set up a limited partnership. In our view, the agreement as between themselves accomplishes that. As regards third persons, including creditors, failure of the partners to comply with requirements of the Limited Partnership Act as to recording and otherwise means that they would have to be treated as general partners. But between themselves, the law of contracts is pertinent.

The evidence shows that following Joseph Wisocki's death, the surviving general partner, Carl C. Howell, continued to operate the tavern business in the usual way, that no activity toward winding up the business had been undertaken nor any effort toward ascertaining the value of plaintiff's one-third share, nor any effort at distribution of her one-third interest.

Plaintiff's counsel notified Howell in writing on February 25, 1965, to liquidate the partnership, render an accounting of the partnership affairs, and make distribution of the Wisocki interest.

When the pleadings in the case were closed, no accounting had yet been made by Howell. Defendant Vanderau had not herself demanded an accounting of the partnership affairs, nor had she taken any steps at that time to obtain a winding up of its affairs.

At the trial, plaintiff made known on the witness stand that she did not accept as correct an accounting prepared lately by one Barnhart, and offered to her by defendant Howell after the pleadings had closed. She objected to certain alleged incorrect entries in the account, as well as to the failure to include the value of the liquor license, especially her one-third interest therein, as an asset of the business.

Plaintiff presses upon the court the belief that she lacks knowledge of the affairs of the business to the point that she is unable, even after investigation, to determine the precise value of her late husband's one-third interest. In consequence, she insists that a fair sale of the business be negotiated in order to ascertain exactly what its value is. . . .

The questions now to be resolved are these:

1. Is plaintiff entitled to a decree ordering liquidation of the assets of the partnership, a determination of the money value of the one-third interest of plaintiff's intestate therein, and distribution of his interest to plaintiff as administratrix of his estate, together with an accounting by defendants?

2. Is the liquor license, or the right to seek a transfer thereof, partnership property which may be subjected to such an order of liquidation?

Plaintiff insists the answer to both questions is yes.

By virtue of the written agreement in relation to the law itself, Wisocki, Howell and Vanderau created a partnership with respect to ownership and operation of the Corner Bar and Grill. The effect of the agreement, unrecorded, is to create a limited partnership, as to Mrs. Vanderau, by contract among the three partners inter sese, but as to the outside world and to its creditors, a general partnership.

Each of the three persons was a part owner of the business. This is stated in paragraph four of the agreement. Janet E. Vanderau was denominated a limited partner and agreed specifically not to interfere in the operation of the business for the first six months from the date the Liquor Control Board issued the license to an approved location. It was agreed that she was not "required" to take an active part in the establishment or conduct of the business. If Howell and Wisocki did not purchase her one-third interest in the business for $5,000 upon expiration of six months after the Liquor Control Board issued the license, she was then to have the right of inspecting all the records of the partnership, to require a monthly accounting and to receive a one-third share of the profits. The agreement does not specify the date when the computation of such profits would commence, whether at the opening of the partnership or at the expiration of the six months. If the legal effect of the agreement is considered to be retroactive with regard to payment of profits to the limited partner, the duty does not mature until the two general partners have failed to purchase her interest at the expiration of the six-month period.

This period had not expired at the time of Wisocki's death.

By reason of failure of the parties to record the agreement of May 19, 1964, under the Limited Partnership Act of April 12, 1917, P. L. 55, we must refer to the Uniform Partnership Act of March 26, 1915, P. L. 18, as controlling aspects of the partnership not laid out in the agreement: 59 PS §1 et seq. It is well known that a partnership is dissolved by the death of one of the partners, unless there is an agreement among them to the contrary: Section 31 (4) of the act, 59 PS §93 (4) ; Underdown v. Underdown, 279 Pa. 482.

The agreement here provides nothing as to dissolution or permitting any delay in dissolution, or any procedure for winding up the partnership. Hence, the provisions of the Uniform Partnership Act, together with the common law, will be applicable: 59 PS §99; section 37 of the act.

Under the law of Pennsylvania, upon the dissolution of a partnership by death of a partner, it is the duty of the survivors to wind up the partnership business and settle its affairs without delay. Plaintiff argues forcefully that the implication of the foregoing is that the business must be closed or liquidated immediately unless all parties in interest consent otherwise. The surviving partner has no right to continue to use the property or interest of decedent in the business operation for his own advantage. He will have to account to those holding the surviving interest of decedent. The fact that the *partnership* must be wound up, doesn't say necessarily that the *business* must be wound up. The partnership is an inchoate and intangible concept and has a separate identity from that of the business which, of course, survives the death.

Upon application of the legal representative of a deceased partner, a court is bound to make an order that the partnership be wound up. This means the sale or division of its assets to the best advantage.

Plaintiff relies on 68 C.J.S. 987, Partnerships, §438, for the statement:

"In an action for partnership dissolution and accounting the entire property of the firm should, as a rule, be converted into cash by a sale of the assets, although such a sale is not required in all instances."

The only exception we can think of is where the partners and representatives agree otherwise.

On the facts of the Wisocki partnership, plaintiff says there is nothing to bring it outside the general rule that sale of the entire partnership assets must occur in order to ascertain the value of plaintiff's one-third fraction thereof. Plaintiff contends that some of the assets of this business are totally incapable of distribution in kind, and others will necessarily have a lower value if distributed in kind than if sold along with the business as a going concern. Plaintiff further argues that continued operation of the business by defendants endangers the preservation of plaintiff's intestate's interest in the partnership.

Plaintiff further contends that liquidation alone will not solve the problem, because no settlement of accounts among the partners has yet taken place. Plaintiff wants the surviving partners to account for their dealings with partnership assets and for the profits they have received since the inception of the partnership. Plaintiff insists that the only proper way of obtaining the accounting required by the partnership act is to have it filed with the court and for the court to retain jurisdiction of further proceedings in perfecting the account in event plaintiff has not obtained a satisfactory accounting within a reasonable term.

Plaintiff cites Sellers v. Hanratty, 332 Pa. 185, for the proposition that where in a partnership case one party is deceased and an accounting has been furnished, the court may (not *must*, our comment) nevertheless require a complete accounting to be filed with

the court. Plaintiff insists that "no complete accounting is possible until there is a winding up of the partnership affairs".

In the Vanderau brief, it is argued that a precise determination of the value of the partnership and of plaintiff's one-third interest will never be possible because of the nature of the liquor license, which is the principal asset. Mrs. Vanderau points out that the license is revocable by the Liquor Control Board; that it expires annually; that it may be transferred only with consent of the board to a transferee approved by the board; that it represents a privilege granted to the holder thereof and that it is not a property interest which can be freely transferred by the owner.

Thus, Mrs. Vanderau contends that the assets of the partnership are not within the general rule which provides for liquidation in order to enable a cash distribution. She says that serious inequities could result if the court were to order the licensees to divest themselves of the license and of the accompanying privilege, and that similar inequities could result if the parties were ordered to bid among themselves in order to liquidate the assets. Mrs. Vanderau advances the unusual view that without agreement among the parties, no equitable liquidation of the assets can be accomplished. This would mean the court is without power to adjudicate the problem; that, in the event of recalcitrance of a party, there is no relief which the law and the courts can give to a claimant even though he is part owner of an asset possessing an obvious money value.

Mrs. Vanderau argues (Howell joins in her argument throughout the case) that the Barnhart report, furnished at plaintiff's request, constitutes a sufficient accounting of the partnership and constitutes compliance by Howell with the obligation imposed upon him as the winding up partner to account under the Uniform Partnership Act, sec. 43, 59 PS §105.

Mrs. Vanderau argues further that a new account would not show anything different from the present one, and that if either Mrs. Wisocki or defendant Vanderau is not satisfied with the Barnhart account, the court should give each of them the right, within a specified period, to file exceptions to the same and then the court or an auditor should hear argument on the exceptions, take evidence if necessary, determine the value of the assets and of the worth of the respective shares of the parties; that the auditor's report to the court should be made according to Pennsylvania Rule of Civil Procedure 1530, and that the court should then enter a decree based on the auditor's findings and should retain jurisdiction for such further orders as might be necessary for equitable conclusion of the whole matter.

Mrs. Vanderau cites Overbeck v. Overbeck, 354 Pa. 142, where a party admitted his duty to file an account to the administratrix of his deceased partner. At the trial it appeared he was in process of preparing an account to file. The Supreme Court stated: ". . . the chancellor should have continued the hearing until the account came in and should then have audited the account and disposed of the suit." But counsel for plaintiff here points out that the facts in Overbeck are different from the present ones in that both sides there had stipulated as to the accuracy of the account and, hence, the court had an agreed account before it.

Mrs. Vanderau also cites Schwartz v. Helwig Pontiac Co., 7 D. & C. 2d 586, 104 Pitts. L. J. 407 (1956), as a situation where the court refused to grant a request for inspection of books and accounts on the ground that an accounting had already been provided by a certified public accountant. Mrs. Wisocki, however, takes the view that this case is no authority on the present problem, because the court there found that all necessary facts were before the court; hence, no further accounting was needed.

Plaintiff is dedicated, it seems, to including Mrs. Vanderau in whatever orders the court may make in granting relief to plaintiff, on the basis that, so far as winding up and converting the assets of the partnership is concerned, her action, concurrence and signature, as well as those of Carl C. Howell, the surviving general partner, to any documents would be required. In event she were included in an order to file an accounting of the partnership affairs and she were totally without knowledge of, or access to, the records in order to do so, her affidavit to that effect would, it seems, be sufficient to comply with the order.

A reading of the partnership statute and the cases noted under the various sections leads to the conclusion that the fundamental rule of partnership law remains in force, that in the absence of a specific agreement to the contrary made during the lifetime of the deceased partner, or made by the legal representative of a deceased partner, every partnership comes to a conclusion upon the death of a partner and the only duty resting upon a surviving partner or partners is to wind up its affairs. This means liquidating the business and assets to the best advantage and promptly.

In a great number of cases, even in the absence of an express agreement before death or after death, the surviving partner or partners have as a matter of practice continued the business and at some later point in time have been called upon through the courts to account for the share of the deceased partner and for the profits attributable to his interest. The cases indicate that whenever the representative of a deceased partner has come to the court with reasonable promptness and has demanded closing of the partnership business, this has been granted by the court. The only way that a surviving partner or partners can continue to operate a business is by the express or implied assent of the legal representative of the decedent or by

the tolerance of such representative. Where a legal representative of the decedent applies to the court for an order of liquidation of the business, the court has no choice, as we view it, but to comply with that demand and to order the business and the partnership liquidated, and a formal accounting to be presented to the court.

The language of the Uniform Partnership Act in any of the sections, including sections 38, 41 and 42, 59 PS §§100, 103 and 104, we do not find is to the contrary. Each of these sections alludes in some respect to continuation of the partnership after death of a partner but, if the business is continued, it is in each instance upon consent of all parties. Cf. Froess, Administratrix v. Froess, 284 Pa. 369 (1925).

The second question posed by the briefs deals with availability of the liquor license, or the right to bring about a transfer of the same, as a partnership asset that may be subject to an order of liquidation by the court. In our view, it is such an asset. Plaintiff relies on Chylak Estate, 6 D. & C. 2d 210, where the executrix of a deceased partner in proceedings before the orphans' court sought evaluation of the latter's interest in a liquor license. The court stated as dictum: "There is a value in the right to transfer a liquor license, but such asset belongs to the partnership and properly must be taken into account in winding up the affairs of the dissolved partnership": Pages 214, 215. Plaintiff also cites Feitz Estate, 402 Pa. 437, for the proposition that the power to control transfer of a liquor license is property under the law of Pennsylvania.

Counsel for Mrs. Vanderau argues that Feitz Estate leads to a result the opposite of that contended for by plaintiff. The question in Feitz concerned liability for Pennsylvania transfer inheritance tax. The court held that, for this purpose, it is necessary to inventory

the right to transfer the liquor license as an asset of the decedent's estate and subject to taxation. However, the Supreme Court also said, ambiguously, ". . . a liquor license *per se*—a personal privilege and not a property right—is not an asset of the estate of the deceased holder."

Everybody is well aware that since the number of licenses is limited by law and regulation, the holding of a liquor license is a valuable right or privilege. We would be flying in the face of common sense to hold that, because the fractional owner of such a privilege dies, his property in a valuable thing is extinguished in favor of the survivors. Defendants take the somewhat extraordinary view that they must be regarded as the fortunate beneficiaries of the fortuitous death of Wisocki in the sense that his share in this valuable asset redounds to their credit.

To us, the holding in Feitz Estate, which assigns value to the liquor license as an asset for Pennsylvania transfer inheritance tax purposes, indicates clearly enough that any court should regard such a license, or the right to control the reissuance of the same, as a valuable privilege subject to liquidation upon dissolution of the partnership.

Counsel for Mrs. Vanderau and for Howell argue strongly that for the court to order a fair sale of the liquor license or the right to transfer the same, subject to approval of the Liquor Control Board, would be so inequitable and unfair as to necessitate its rejection by a court of equity, for the reason that, by this means, Howell and Mrs. Vanderau may lose their own valuable rights in the license because, as a practicable matter, it may prove impossible for them, or either of them, to acquire the new license. We don't know exactly why this is so, but we are satisfied it cannot control the solution of the present problem. It is likely that some method exists whereby defendants, or either of them,

can safeguard themselves, assuming they are law abiding citizens of character, to whom the board will be eager to transfer the license. If their difficulty is lack of funds, we cannot remedy this.

The only remaining question is that of defining clearly the legal right possessed by plaintiff, as fiduciary of her late husband-partner, to insist upon an accounting by the surviving partners. The matter is discussed in section 43 of the Uniform Partnership Act, 59 PS §105. Plaintiff contends that the account which Howell has offered (belatedly, but with no harm to plaintiff because of the delay) does not conform to the requirements of the law. Little is specified as to why the account does not conform.

On review of the whole question, we think it is better to yield to plaintiff's demand that an account be filed formally by defendants as part of the case and over their signatures in whatever form they find legally proper, depending upon their respective knowledge of the matters involved. Then, plaintiff will be in a position to formally react to the account by filing exceptions in whatever degree and manner is considered appropriate, and the court can take up the problem from there.

Weissman v. Henkin, 154 Pa. Superior Ct. 12, is cited by plaintiff as a case where one of two partners did not attend properly to the business of the partnership and, in fact, was the cause of numerous irregularities and damage to the partnership business. The other partner found it necessary to move in, take over the business and bring it back to health. The trial court in Philadelphia refused to direct the winding up of the affairs of the partnership and the sale of its assets through a receiver or otherwise. The Superior Court reversed, holding that the trial court had abused its discretion. Kelly v. Shay, 206 Pa. 208, was cited for the rule: "The general rule is, that upon dissolution

of a partnership, it is the right of each partner to have the property converted into money by a sale". To like effect is Gianakos v. Magiros, 238 Md. 178, 208 A. 2d 718.

## DECREE

Now, September 1, 1965, the court having considered the suggested order presented by plaintiff pursuant to the opinion filed in the above captioned matter, the court does hereby order and direct defendants, Carl C. Howell and Janet E. Vanderau, to wind up the partnership business of Corner Bar and Grill; to sell and convert all the assets thereof to cash; to file an account with the court in conformity with Pa. R. C. P. 1530, covering all of the affairs of the partnership from the date of its inception through its dissolution, winding up and liquidation, to and including the disposition of the proceeds of such sale and conversion pending final distribution thereof, together with a proposed schedule of distribution to creditors and to plaintiff, and to pay plaintiff one third of the balance of said liquidation assets remaining after the payment of all just claims of creditors of the aforesaid partnership, with interest thereon from February 13, 1965; and the court does hereby further order and direct defendants, Carl C. Howell and Janet E. Vanderau, to accomplish said winding up and liquidation within 60 days from the date of this decree and to file the aforesaid account within 20 days from the date of consummation of such sale and conversion and to pay the aforesaid amount to plaintiff immediately after the said accounting, together with any required amendments thereto, shall have become final; and the court hereby further orders and directs that such sale and conversion shall include the restaurant liquor license no. R18421 issued by the Pennsylvania Liquor Control Board in the names of Joseph Wisocki and defendants; that the sale or transfer of said liquor license shall be made in strict conformity with the provisions of the

Pennsylvania Liquor Code and that all of the parties in the above-captioned matter shall join in the consummation of the sale or transfer of the said liquor license, and the plaintiff is ordered to deliver to defendant, Janet E. Vanderau, at plaintiff's home, the restaurant equipment and furniture in her possession; and the court further orders and directs defendant, Carl C. Howell, to pay the costs of this case from the partnership funds, and the court hereby further orders and directs defendants to refrain from dissipating the assets of the said partnership or in any way from causing or permitting unreasonable loss thereto and to refrain from conducting any business of the partnership except such as is necessary and incidental to winding up of the partnership affairs; and the court hereby further orders and decrees that upon application of plaintiff to the court, the proposed sale of any of the assets of the said partnership shall be received by the court, whereupon the court shall approve the said sale and order all the parties to join in the consummation thereof, or shall refuse to approve the same, in which latter event the court shall either restrain the said sale or shall enter such other orders as are appropriate; and it is hereby further ordered and decreed that should defendant fail to effect the aforesaid winding up and liquidation of the partnership assets within the aforesaid 60-day period, the court, upon application of plaintiff, will entertain a motion to appoint a receiver to take over the assets of the said partnership and to liquidate and wind up the partnership affairs; and the court does hereby retain jurisdiction of the cause and of the said parties for the purpose of making such additional and supplemental orders and decrees as the equities of the case may from time to time require.