# BETTY SUE WHITE *v.* STATE OF MARYLAND

[No. 357, September Term, 1968.]

*Decided August 5, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Tucker R. Dearing* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John C. Hancock, State's Attorney for Charles County,* and *Louis P. Jenkins, Assistant State's Attorney for Charles County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, Betty Sue White, was convicted in the Circuit Court for Charles County by Judge Roscoe H. Parker sitting without a jury of assault with intent to murder and attempted robbery with a dangerous and deadly weapon. She was sentenced to serve concurrent indeterminate terms not to exceed eight years under the jurisdiction of the Department of Correction.

On December 30, 1967, at about 10:00 p.m., two men, Aubrey Richardson and Raymond Thomas, entered the Drive-In-Liquor Store near Faulkner, Maryland. At that time Mrs. Lee Levin, the proprietor of the store, Irving Levin, her son, and Steve Sherman, her grandson, were the only other persons present in the store. The two men attempted to rob Mrs. Levin at gunpoint. Irving Levin and Steve Sherman foiled the attempt and prevented Aubrey Richardson from leaving the store. Raymond Thomas escaped through a back door. Irving Levin ran outside to the highway. He observed a white 1966 Ford convertible car on Route 301 about 200 feet north of the driveway to the store. The driver's door was open and David Richardson was standing beside the car on that side. Irving Levin called, "Hold it right there, you're covered." David Richardson fired one shot at Irving Levin with a shotgun; several pellets struck Mr. Levin in the face. Mr. Levin fired back at the man with his pistol. Richardson then fired again. Mr. Levin ran back to the store and called the sheriff's office. Neither Lee Levin, Irving Levin, or Steve Sherman saw appellant White during the time the attempted robbery and the gunfight were

in progress. They first saw her at the sheriff's office some hours later.

After the exchange of gunfire, the Ford convertible proceeded north on Route 301 for several miles, until it came to the Fairway Bar near Bel Alton, Maryland. The car was driven into the parking lot of the Fairway Bar, went behind the Bar and parked on the north side of the Bar facing toward the highway. Deputy Sheriff Robert A. Jameson, who had received a call to be on the lookout for the car, saw it pull into the parking lot, reported his location, and then drove to the Ford. At that time Deputy Sheriff Charles Thompson's police car entered the parking lot. Deputy Jameson ran to the passenger side of the Ford, while Deputy Thompson ran to the driver's side. Deputy Jameson testified that when he reached the car he observed David Richardson seated in the driver's seat, Raymond Thomas seated in the right rear seat and appellant White seated in the left rear seat. Deputy Thompson testified that David Richardson was in the driver's seat, and that he could not say where appellant White was sitting. He did not testify concerning Raymond Thomas' location in the car. While Deputy Jameson was standing at the passenger side of the Ford, Deputy Sheriff Weldon Wood arrived on the scene in his car and approached the Ford on the passenger side. As he approached, Raymond Thomas emerged from the vehicle, and Deputy Wood placed him under arrest. Deputy Jameson did not testify to where in the car David Richardson, Raymond Thomas, or appellant White was sitting. While Deputy Jameson was near the passenger side he "observed Betty White leaving the car and running along the front side or the front part of the [Fairway] Bar . . . She went into the front side of the Bar and I followed her. By the time I reached the front door of the Bar, I observed her standing at the bar with her back towards me. Upon getting about halfway between the front door and the bar where she was standing, she turned around and looked toward me . . . I told her what she was being charged with, and handcuffed her and [went] out the front door

with her." Deputy Thompson also testified that "sometime during the course of events . . . Mrs. White ran from the car or proceeded from the car to the Fairway Bar, where she was followed by Deputy Jameson and another officer."

Deputy Wood testified that after all of the occupants had been removed from the Ford he searched that vehicle. On the front seat he found a transistor radio, which had several buttons on it, one of which had a design of a car in front of it, which designated to Deputy Wood a "police band." The radio was turned on when he found it and the button behind the emblem of the car was pushed in. On the "front floorboard" of the Ford Deputy Wood found "the forearm or apron of a shotgun." Wedged in "the crack in the rear seat" he found "the barrel and stock of a shotgun, which was a 12 gauge Harrington and Richardson, single barrel, the hammer type . . . single shot . . ." On the rear seat of the car Deputy Wood found an overcoat, in one of the pockets of which was "expended 12 gauge Federal shell, a number nine shot." On the front floorboard he found "an expended 12 gauge number eight Federal Monarch shell" and in the convertible boot of the back seat were "two unexpended 12 gauge number eight shells."

Deputy Sheriff Donald Poole testified that near dawn on the following morning he went to the Drive-In Liquor Store and walked northward on the shoulder of Route 301. Seventy-two strides north of the driveway to the Drive-In Liquor Store he found an expended 12 gauge shotgun shell. It was stipulated that this shell had been fired from the shotgun found in the Ford.

The State rested its case and the appellant moved for judgment of acquittal, which was denied.

The appellant testified that on December 30, 1967 she had been in Brandywine, Maryland. David and Aubrey Richardson and Raymond Thomas asked her to take them to see Richardson's mother in Louisa, Virginia. She agreed, but because she was very tired she gave David

Richardson permission to drive her car. As they were leaving Brandywine she put back the reclining front seat on the passenger side and went to sleep. She slept until she heard shots, which woke her up. When she woke up she saw David Richardson and Raymond Thomas getting into the car. She asked them what was happening but they were talking between themselves and apparently did not answer her. She said to them, "Well, I have to go to the bathroom." They drove to the Fairway Bar and when they arrived there she left the car and walked into the Bar. She walked to the bar to ask the bartender where the ladies room was. Two police officers then came up to her, patted her down, and took her to a patrol car.

The appellant denied hearing anyone plan a robbery, and denied having anything to do with the attempted robbery of the Drive-In Liquor Store. She did not know that there was a shotgun in the car until they arrived at the Fairway Bar and she never saw Raymond Thomas with a pistol.

The appellant again moved for judgment of acquittal and the motion was again denied.

The appellant complains on appeal that there was insufficient evidence to convict her as a principal in the attempted armed robbery and the assault with intent to murder.

We are of the opinion that the lower court could find from the evidence that the appellant was present at the scene of the crime, that she was in such a position that she could act as a lookout, that she provided the automobile used to transport herself and the others to the Drive-In Liquor Store and to leave that area after the attempted robbery and the assault, that she knew of the presence in the car of the shotgun and of the radio which was tuned to the "police band," and that she attempted to flee from the officers at the Fairway Bar. We believe that these findings are not clearly erroneous and would support the convictions. See *Howell v. State,* 5 Md. App. 337 (1968); *Brooks v. State,* 2 Md. App. 291 (1967); *Chavis v. State,*

3 Md. App. 179 (1968) ; *Anderson v. State,* 3 Md. App. 362 (1968).

The appellant next contends that the trial court erred in admitting into evidence certain testimony over her objection. Deputy Thompson testified that he went to the Drive-In Liquor Store in response to Irving Levin's call about the attempted robbery. When he arrived at the Liquor Store he took custody of Aubrey Richardson and placed him in his patrol car. Shortly thereafter Deputy Thompson received a call to assist Deputy Jameson at the Fairway Bar. Upon arriving at the Fairway Bar and seeing the 1966 Ford convertible he asked Aubrey Richardson, "Is that the car?" Richardson stated, "Yeah, I think so." The appellant contends that Deputy Thompson's testimony as to what Aubrey Richardson said was hearsay and violated her right to due process of law.

We find no reversible error here. The alleged hearsay concerned only the identification of the car in which the appellant was riding. The same matter was testified to not only by the various Deputy Sheriffs mentioned above, but was also admitted by the appellant. The alleged hearsay was thus clearly cumulative and under our evidentiary rules was harmless error. See *Richardson and Thomas v. State,* 7 Md. App. 334.

Neither does appellant's claim that the statement violated her right to due process of law have merit. There was overwhelming and uncontradicted evidence that appellant was present in the car and the impact of Aubrey Richardson's statement upon the integrity of the fact finding process which culminated in appellant's conviction was microscopic. Under these circumstances it can fairly be said that there is not a reasonable possibility that the statement complained of might have contributed to appellant's convictions. The admission of Aubrey Richardson's short statement, "Yeah, I think so," was thus, at most, harmless error. See *Chapman v. California,* 386 U. S. 18 (1967) ; *Harrington v. California,* 37 U.S.L.W. 4472 (U. S. June 2, 1969) ; *Richardson and Thomas v. State, supra.*

Another statement made by Aubrey Richardson to Deputy Thompson, and testified to by Deputy Thompson, is also complained of as hearsay. That statement was that, "The car was a 1965 or '66 yellow Ford convertible with D. C. registration." No objection was made to the statement at trial and the matter is thus not before us. Maryland Rule 1085. In any event admission of the statement would be, at most, harmless error for the reasons discussed above.

The appellant further contends that the trial court erred "in trying Betty Sue White after he had tried the other two co-defendants." The record shows that two persons jointly indicted with appellant were tried by Judge Parker earlier the same day as the trial in the instant case. At the time of her trial no objection was raised by appellant with respect to the hour at which the trial began or to Judge Parker trying the case (the appellant had elected trial by the court). The issue not having been raised below it is not congnizable on appeal. Maryland Rule 1085.

The appellant also contends that the trial court erred "in forcing [her] to go to trial, [and] in having the doctor testify as to her physical fitness to go to trial out of her presence." The record reveals that the testimony of the examining doctor was taken in open court prior to her trial, that appellant's attorney was present, that he cross-examined the doctor, and that he made no objection to the doctor's testimony. The record reveals also that no objection was made by the appellant or her attorney to "forcing" appellant to be tried at the time for which her trial had been set. The issues not having been raised below, there is nothing before us to review. Maryland Rule 1085. Needless to say, the examination by the doctor for purposes of determining whether she was in sufficient health to be tried did not in any way impinge upon her right not to incriminate herself, and, on the particular facts of this case, the hearing was not a part of the trial at which her presence was required.

The appellant contends also that the trial court erred in permitting certain witnesses who had not obeyed a sequestration order in the prior trial of one jointly indicted with appellant to testify in the instant trial. The record shows that no objection was made at appellant's trial to the admission of any witness' testimony on the ground here involved. Maryland Rule 522 d2 not having been complied with, there is nothing for us to review. Maryland Rule 1085.

The appellant makes the further claim that the search of her car was illegal. The record clearly demonstrates that the search of the car and the seizure of the objects adverted to above were the lawful contemporaneous incidents of a lawful arrest. See *Richardson and Thomas v. State, supra.*

Lastly, the appellant contends that she was placed in an illegal lineup and that the identification of her at trial was tainted. The record affirmatively shows that she was never placed in a lineup; furthermore, it is clear that neither Lee Levin, Irving Levin, nor Steve Sherman identified the appellant, either before trial or at trial, as being one of those involved in the crimes.

*Judgments affirmed.*