549 A.2d 403

**P.V. PROPERTIES, INC.**

v.

**ROCK CREEK VILLAGE ASSOCIATES LIMITED PARTNERSHIP.**

No. 22, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Nov. 2, 1988.

78

**80**

Joseph D. Gallagher (Cynthia A. Raposo and Gill & Sippel, on the brief), Rockville, for appellant.

James H. Hulme (Leonard S. Goodman and Arent, Fox, Kintner, Plotkin & Kahn, on the brief), Bethesda, for appellee.

Argued before GILBERT, C.J. and ALPERT, J., and JAMES F. COUCH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

ALPERT, Judge.

Writing upon a "clean slate," we are called upon to decide whether a tenant in a shopping center is entitled to an itemized listing of common area maintenance expenses where the lease is silent in that respect and the landlord is unwilling to provide the desired information. Appellant, tenant, P.V. Properties, Inc. ("P.V."), appeals the ruling against it by the Circuit Court for Montgomery County, in its dispute with appellee, landlord, Rock Creek Village Associates Limited Partnership ("Rock Creek"), over its demand for an itemized listing of common area maintenance expenses.

P.V. was the assignee of a leasehold interest of a shopping center store whereby it agreed to pay a proportionate share of the cost of maintaining the common areas of the shopping center. Rock Creek was the successor to the original landlord. Under the terms of the lease the tenant agreed to reimburse the landlord for its pro rata share of the total actual cost of maintenance. The tenant, appellant, requested that the landlord itemize the costs, and the landlord refused, contending that the lease did not require it to do so. Appellant filed an action for declaratory judgment and, in addition, sought alternative relief in the form of an accounting. The trial court denied both counts, ruling that the terms of the contract were clear, and do not require the landlord to provide the tenant with an itemized listing of common area maintenance expenses.

P.V. has raised three issues on appeal:

1. Whether the terms in the lease which require the landlord to furnish tenant a written statement setting both the "total actual costs" incurred by the landlord in operating and maintaining the common areas require that the landlord furnish the tenant with evidence verifying each expense charged.

2. Whether the tenant is entitled to an accounting from the landlord of the items assessed against it for common area maintenance where all the information relating to those charges is in the exclusive control of the landlord.

3. Whether the court erred in refusing to admit evidence related to landlord's assessment of common area maintenance fees to tenants other than P.V.

## FACTS

On June 16, 1970, Crispin Corporation, landlord, and Suburban Restaurants, Inc., tenant, entered into an agreement of lease for a store in the Rock Creek Village Shopping Center. Rock Creek has succeeded to Crispin Corporation's interest as landlord under the lease and P.V. has succeeded to Suburban Restaurant Inc.'s interest as tenant under the lease.

The lease requires Rock Creek, *inter alia,* to operate and maintain the common areas of the shopping center. It also provides that the tenant will reimburse the landlord on a pro rata basis for the costs incurred in maintaining the common areas. Additionally, the tenant is to pay "... as additional rent, the sum of Forty-five Dollars ... per month" as a credit against tenant's pro rata share of the common area costs. The lease sets forth the types of expenses which constitute the common area maintenance costs.

All records concerning the actual expenses of common area maintenance are within the exclusive possession and control of Rock Creek. Rock Creek records each individual expense of common area maintenance in a standard book of

accounts in accordance with a double entry accounting system. Their records are maintained to comply with Internal Revenue Service reporting requirements.

In January of each year the landlord is to furnish to the tenant a "written statement setting forth the total actual costs" which it incurred in operating and maintaining the common areas in the preceding year. If the tenant's pro rata share of such expenses exceeds the total of its monthly payments on account of those expenses, the tenant must pay the difference within 15 days. If the tenant's share of common area expenses is less than the total of its monthly payments on account of those expenses, it is entitled to a refund.

In April of 1986 Rock Creek sent P.V. a bill for its pro rata share of common area expenses for the preceding year. The bill they received from Rock Creek for the common area charges for 1985 was significantly greater than what the previous owner had charged them for the same expenses for 1984. P.V. initially withheld payment, requesting a detailed itemization of expenses in order to verify the amount charged. Rock Creek refused to provide the requested information and demanded payment. P.V. then submitted the amount claimed under protest, and thereafter filed its Complaint for Declaratory Relief.

P.V. asked the court to declare that Rock Creek is required to provide an itemization of the actual costs comprising the annual common area maintenance in sufficient detail so as to permit verification of the purpose and amount of the various expenditures which make up the common area assessment. A subsequent amended Complaint sought an accounting as alternative relief. The court dismissed the complaint, ruling that the relief requested in both counts was identical but could not be granted unless the court were to insert a new provision in the lease. The court declined to rewrite the contract, stating that the terms of the original lease were clear and unambiguous and did not require the landlord to provide the tenant with an itemized

listing of the expenditures involved in the common area maintenance.

I. Declaratory Judgment.

It is well settled that Maryland follows an objective approach in construing contracts. *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985); *Kasten Construction Company v. Rod Enterprises*, 268 Md. 318, 301 A.2d 12 (1973). Under this standard, the court in construing an agreement must consider the following:

First, the court must determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*General Motors Acceptance Corp.*, 303 Md. at 261, 492 A.2d at 1310; *Town & Country v. Comcast Cablevision of Md.*, 70 Md.App. 272, 520 A.2d 1129, 1133 (1987).

A contract is considered ambiguous if, to a reasonably prudent layman, it is susceptible of more than one meaning. *Truck Insurance Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 418 A.2d 1187, 1190 (1980); *Stanbalt Realty Co. v. Commercial Credit Corp.*, 42 Md.App. 538, 401 A.2d 1043 (1979). When a provision in a contract is susceptible to more than one interpretation, a construction which makes the contract fair and reasonable will be preferred to one which leads to either a harsh or unreasonable result. *Canaras v. Life Truck Services, Inc.*, 272 Md. 337, 322 A.2d 866, 877 (1974); *Baltimore City v. Industrial Electronics, Inc.*, 230 Md. 224, 186 A.2d 469 (1962); *Stanbalt, supra.* Contract provisions must be viewed in the

context of the entire contract rather than construing each term separately. *Rigger v. Baltimore County,* 269 Md. 306, 312, 305 A.2d 128 (1973); *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 403 A.2d 379, 382 (1979).

Application of these fundamental principles begins with analysis of the language contained in the lease itself. Section 17 of the lease concerns the maintenance of the common areas of the shopping center. Specifically, section 17.03 provides:

> 17.03—Landlord will pay the cost of operating and maintaining the common areas of the Center, as described in paragraph 17.01, including but not limited to, the cost of cleaning, snow removal, landscaping, decorations, pylon signs, lighting and other utilities, resurfacing, painting, supplies, policing, wages of personnel to implement such services, workmen's compensation insurance, payroll taxes, public liability and property damage insurance, insurance against vandalism and malicious mischief, taxes on the personal property of whatever nature and however described, charged or assessed, straight line depreciation of equipment, and five percent (5%) of all the foregoing costs to cover the Landlord's administrative and overhead expenses.

Under this provision, the landlord is obligated to pay for certain specific costs associated with the maintenance of the common areas. The following section, 17.04 provides in pertinent part:

> 17.04—*Common Area Charge:* Tenant shall reimburse Landlord on a pro rata basis for the foregoing costs of operating and maintaining the common areas of the Center.... As soon as practicable after the end of each calendar year, Landlord will furnish to Tenant a written statement setting forth the *total actual costs* incurred by the Landlord in operating and maintaining the common areas during the preceding calendar year or portion thereof; and, in addition, Landlord will set forth Tenant's exact pro rata share of such costs which shall be determined by multiplying the total of the common area costs

by a fraction.... [1] If the Tenant's pro rata share of such common area costs is less than the amount which Tenant has paid in monthly installments during the preceding calendar year or portion thereof, then Landlord will refund the difference to Tenant within the following fifteen (15) days; however, if Tenant's pro rata share of such common area costs is greater than the amount Tenant has paid in monthly installments during the preceding calendar year or portion thereof, then Tenant will pay the difference to Landlord, as additional rent, within fifteen (15) days after receiving written notice thereof.

(Emphasis supplied).

These two sections read together set forth both the landlord's and tenant's rights and obligations regarding the cost of maintenance of the common areas of the shopping center. The landlord's right to charge the tenant for common area expenses is a limited one. It is specifically limited to those expenses which fall within the definition of common area expenses contained in Section 17.03 of the lease and were actually incurred by the landlord in the previous year. In order to collect payment, the landlord must provide the tenant with a yearly written statement setting forth the "total actual costs" incurred by the landlord in operating and maintaining the common areas.

Appellant contends that the trial court erred when it construed the phrase "total actual costs" to mean that the landlord only had to provide the tenant with one figure representing the total amount it spent that year on common area maintenance, rather than providing the tenant with an itemized list of the expenses incurred.[2] Appellant argues that this interpretation leads to a harsh and unreasonable

1. The portion of section 17.04 excluded from the quote refers to the formula pursuant to which tenant's pro rata share is determined.

2. P.V. alleged in its Complaint for Declaratory Judgment that the previous owners of the shopping center always gave them an itemized accounting of the charges assessed against them for common area maintenance; however, P.V. presented no evidence at the trial to support this allegation.

result. The tenant has the right under the lease to be charged only for certain specific expenses incurred by the landlord for maintenance of the common areas. Appellant states that unless the tenant is given an itemization of the expenses involved, he has no way of verifying that the amount assessed was actually incurred. The landlord could, theoretically, come up with any figure and claim it represents the amount spent on common area maintenance. The tenant is simply required to pay that amount without question. Therefore, appellant argues construction of the terms of the lease is contrary to the express language of the contract when read as a whole. Section 17.03 clearly delineates the charges for which the landlord can seek reimbursement from the tenant. The purpose in outlining these charges is to ensure that the landlord does not include other charges, such as capital improvements, to the tenants as part of their common area maintenance charges. Section 17.04 requires the landlord to provide the tenant with an annual statement reflecting its "total actual costs" of maintenance.

We believe that the two sections, read together, require the landlord to provide the tenant with an annual statement which outlines in detail the type and amount of each expense it incurred. This requirement to itemize in detail the various expenses incurred in common area maintenance can also be *implied* from the terms of the lease. Although a court generally "[w]ill hesitate to construct a contract for the parties, under certain circumstances it is necessary in the interests of justice to imply a term which was not in the contemplation of the parties. 3 Corbin, *Contracts,* § 541 at n. 69 (1960). For example, the law will imply an obligation to act in good faith and to deal fairly with the other party, *Whitney v. Halibut, Inc.,* 235 Md. 517, 202 A.2d 629 (1964); *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 200 A.2d 166 (1964); Restatement Second of Contracts § 205; a duty to use best efforts, *Food Fair, supra;* E.A. Farnsworth, *Contracts,* § 7.17 at 529 (1982); and an obligation to cooperate when necessary to the per-

formance of a condition, *Alois v. Waldman,* 219 Md. 369, 149 A.2d 406 (1959).

In *Whitney v. Halibut, Inc., supra,* the purchaser of a parcel of real estate agreed that in addition to the purchase price, it would pay the seller's capital gain tax on the transaction. A dispute arose over the accuracy of the calculation of the seller's basis and hence his capital gain. The Court of Appeals held that there was an implied obligation for the seller to disclose the data underlying the calculation of the purchaser's contractual liability.

[The seller] could not ... merely sit back and take the position that [the purchaser] had to pay his entire capital gains tax in any event and furnish no proof as to cost. We think that he was also obligated to disclose to the vendee his cost data and the basis upon which his liability for the federal income tax on his capital gain was computed ... It is, we think, clear that there may be implied obligations as well as express obligations under a contract.

235 Md. at 529–30, 202 A.2d at 635. The same implication applies here. The obligation of good faith and cooperation implied in every contract gives rise to the implied requirement on the part of the landlord to disclose its cost data and the basis upon which the tenant's common area maintenance liability was computed.

In addition, even if the phrase "total actual costs" is ambiguous, the rules of contract require that the ambiguity be resolved in favor of reason and fairness, *Katz v. Williams,* 239 Md. 355, 211 A.2d 723 (1965), and construed against the draftsman, *Stanbalt, supra,* as opposed to a reading which creates harsh or inequitable results. *Canaras v. Lift Truck Services, Inc., supra.* The lower court's interpretation of this phrase permits the landlord to demand any sum it desires without giving the tenant any means to verify the charges. Reason and fairness require that the tenant be afforded some means of verifying the charges assessed against it. Otherwise, the tenant has no way of determining whether the charges it is being forced to pay

fall within the scope of its obligations under the lease. The parties are under a duty to act in good faith and deal fairly with each other. *Food Fair, supra.* Therefore, the landlord is under an obligation to act in good faith in incurring, recording and assessing common area maintenance charges. Thus, we hold that appellant was entitled to a declaratory judgment declaring that the lease requires the landlord to itemize the actual costs assessed against appellant as to category and amount.

Appellees raised a new issue at oral argument. They argued that the integration clause in the lease, found in section 36.01, precludes the court from implying any new or additional terms in the lease. This issue was not raised below and therefore has not been preserved for appellate review. An appellate court will not ordinarily decide issues which have not been raised and decided by the trial court. Maryland Rule 8–131(a). *See Kohr v. State,* 40 Md.App. 92, 104, 388 A.2d 1242, *cert. denied,* 283 Md. 735 (1978); *Washington Homes, Inc. v. Baggett,* 23 Md.App. 167, 171, 326 A.2d 206 (1974), *cert. denied,* 273 Md. 720, 723 (1975); *White v. State,* 7 Md.App. 416, 423, 256 A.2d 174 (1969). Nevertheless, assuming arguendo that it was raised below, the purpose of an integration clause is to exclude prior oral agreements. *See Whitney v. Halibut,* 235 Md. 517, 527, 202 A.2d 629, 633 (1964); *Department of General Services v. Cherry Hill Sand & Gravel Co., Inc.,* 51 Md.App. 299, 305, 443 A.2d 628 (1982); and 3 Corbin, *Contracts,* § 573 (revised 1960). It does not exclude a finding by the court that the parties have an implied condition to deal in good faith with each other. *Whitney v. Halibut,* 202 A.2d at 635. "The fact that a party has made a promise in words, words that are written and form a part of what may be called an 'integration,' does not wholly preclude the finding by implication of an additional promise by the very same party." Corbin, *Contracts* § 564 at 297 (1960); citing *Proctor v. Union Coal Co.,* 243 Mass. 428, 137 N.E. 659 (1923).

## II. Accounting.

Appellant further contends that the trial court erred when it denied appellant's request for an accounting.[3] Appellant asserts that they are entitled to the equitable relief of an accounting because of the existence of a fiduciary relationship between the parties and because there is no adequate remedy at law.

 The general rule is that a suit in equity for an accounting may be maintained when the remedies at law are inadequate. *Nagel v. Todd,* 185 Md. 512, 45 A.2d 326 (1946). An accounting may be had where one party is under an obligation to pay money to another based upon facts and records which are known and kept exclusively by the party to whom the obligation is owed, or where there is a confidential or fiduciary relation between the parties, and a duty rests upon the defendant to render an account. *Gianakos v. Magiros,* 238 Md. 178, 208 A.2d 718 (1965); *Dormay Construction Corp. v. Doric Co.,* 221 Md. 145, 156 A.2d 632 (1959); *Johnson v. Bugle Coat, Apron & Linen Service, Inc.,* 191 Md. 268, 60 A.2d 686 (1947); *Nagel v. Todd,* 185 Md. 512, 45 A.2d 326 (1946); *Cook v. Hollyday,* 186 Md. 42, 45 A.2d 768 (1945); *Anderson v. Watson,* 141 Md. 217, 118 A. 569 (1922).

Citing as precedent the case of *Anderson v. Watson, supra,* appellant contends that there existed a fiduciary relationship between the parties wherein Rock Creek owed them a duty to itemize their common area maintenance charges. In *Anderson* a group of coal miners sued their employer for an accounting of the coal they had mined. The employer had the exclusive means of weighing the coal. The court held that because the coal miners were obliged to rely on the good faith of their employer in properly weighing the coal, a fiduciary and confidential relationship was

---

**3.** While our decision in part I hereof effectively resolves any question of accounting, we believe that the principles of law, as they relate to an accounting under the circumstances *sub judice,* are both instructive and supportive.

created. Accordingly, an accounting would be ordered. *Id.* at 235, 118 A. 569. The court determined that the equitable relief of an accounting was proper for the following reasons:

> [W]e cannot say that a court of law can, under the circumstances of this case, afford the complainants an adequate and complete remedy, for while it may be true that, in the exercise of the powers conferred by sections 99 and 100, article 75, Code Pub.Gen.Laws, such a court could effectually solve the account between the parties, yet the powers thus conferred are not called into existence until after a suit has actually been brought, and *unless the plaintiff is informed of the extent of his claim he cannot properly bring an action at law upon it,* ... In this case the complainants do not know how many cars of coal they mined, nor the rate of compensation agreed upon from time to time for their labor, and until they receive that information they cannot properly present their claim in a court of law.
>
> Nor can there be any real question that there was a *fiduciary and confidential relation between the parties to this proceeding.* The coal which measured the compensation to be paid to the men who mined it was weighed by the company on its own scales and by its own agents, out of the presence of the miners, who were, by the necessities of the case, precluded from witnessing the operation of weighing, and who were as a practical matter obliged to rely on the good faith of the company. Under such circumstances the miners naturally and necessarily trusted and relied upon the company's good faith, and the company assumed the duty of dealing fairly with them. For these reasons, in our opinion, the complainants are entitled to the accounting prayed in their bill.

(Emphasis supplied).

Similarly, owners and developers of property who are responsible for maintaining common areas have been held to be in a fiduciary relationship with the lot owners who pay them for this maintenance. For example, in *Divizio v.*

*Kewin Enterprises, Inc.,* 136 Ariz. 476, 666 P.2d 1085 (1983), the court held that mobile home lot owners were entitled to an accounting of the common area costs assessed to them by the owners of the park because the parties had a fiduciary relationship, one of trust, and the lot operators and common-area owners and managers were obligated to furnish accountings. *Id.,* 666 P.2d at 1088. *See also Young v. Lucas Construction Company,* 454 S.W.2d 638 (Mo.Ct.App.1970).

■ Likewise, in the case at bar, there is a limited fiduciary relationship between Rock Creek and P.V. Rock Creek maintains and exclusively controls the records which document its expenses. P.V. is forced to rely on the good faith and fair dealing of the landlord in assessing the charges. Therefore, under these circumstances, a confidential and fiduciary relationship exists between the parties. A confidential relation is not limited to cases of guardian and ward, attorney and client, and principal and agent, but exists in every case where confidence is reposed by one person and accepted by the other. *Johnson v. Bugle Linen Service,* 191 Md. at 275–276, 60 A.2d 686 (citing *Grimes v. Grimes,* 184 Md. 59, 63, 40 A.2d 58, 61 (1944)).

■ Even assuming the existence of a fiduciary or confidential relationship, Rock Creek maintains that P.V. does have an adequate remedy at law. They assert that P.V. could sue them for breach of contract and then through the civil discovery procedures obtain from them an itemized accounting. This suggestion is ludicrous, and certainly not one that leads to an adequate remedy at law. What they are suggesting is a reversal of proper litigation procedures. Generally, a claimant has a cause of action against a defendant that the parties have not been able to resolve, and therefore the claimant files suit. In its proposed scenario, Rock Creek recommends that P.V. first institute legal proceedings and then determine through discovery whether or not it has a cause of action. This course of action is a waste of both the court's and the litigants' time and ex-

pense. In addition, should P.V. refuse to tender payment, they run the risk of being sued for breach of contract and further, run the risk of being evicted from the shopping center. This can hardly be considered an adequate remedy at law.

In *Johnson v. Bugle Coat, Apron & Linen Service, supra,* the plaintiffs, restaurant owners, sued the defendant, a linen supply company, requesting an accounting of the quantities of each type of linen rented from the defendant over a four year period. In their complaint they alleged that the amount they paid the defendant for the linen service may not have been correct, but they had no way of determining if their suspicion was correct because all the records were kept by the defendant. The Court of Appeals denied plaintiffs' request for an accounting, noting that plaintiffs possessed the means to determine if the quantity charged was the quantity received. This was because the defendant submitted to the plaintiff on a monthly basis an itemized bill stating the quantities purported to have been delivered. The plaintiffs could have counted the goods delivered and compared that total to the amount listed on the monthly statements to determine whether defendant's statement was accurate. Because plaintiffs had the means to verify the charges assessed against it, their requested relief for an accounting was denied.

In the case *sub judice,* on the other hand, appellant had no means of determining whether the annual statement reflected the actual expenses incurred by the landlord for common area maintenance. Rock Creek refused to render an itemized bill, but instead issued one statement which they claim covers all their expenses for the past year.

We, therefore, conclude that Rock Creek must render "an accounting" to the appellant by providing an itemization as to category and amount of the actual costs within the annual common area maintenance assessment.

In light of our decision on issues one and two, we need not address appellant's final contention that the court erred

in refusing to admit evidence related to landlord's assessment of common area maintenance fees to other tenants in the Rock Creek Shopping Center.

JUDGMENT REVERSED; THE CIRCUIT COURT FOR MONTGOMERY COUNTY TO ENTER DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.