The **AIR TRANSPORT ASSOCIATION OF AMERICA, Plaintiff,**

v.

Melvin **LENKIN, et al., Defendants.**

**Civ. A. No. 88–1359–LFO.**

United States District Court, District of Columbia.

April 20, 1989.

**26**

Robert E. Greenberg and Carlos M. Recio, Deso & Greenberg, P.C., Washington, D.C., for plaintiff.

Alan S. Weitz, Ginsburg, Feldman & Bress, Chartered, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

On February 25, 1971, plaintiff signed an agreement to lease office space from defendants in a new building at 1711 New York Avenue, N.W., Washington, D.C. Seventeen years later, plaintiff filed this suit, alleging that defendants have been incorrectly interpreting one of the lease's provisions and seeking a declaratory judgment as to the provision's meaning and judgment in the amount of overpaid rent attributable to the alleged improper interpretation. Because this action was filed after the expiration of the applicable statute of limitations, defendants' motion for summary judgment must be granted. In addition, even had this suit been timely filed, defendants' motion would be granted because the provision in question is ambiguous and the relevant extrinsic evidence emphatically supports defendants' interpretation.

The base rent in 1973 for the office space portion of the leased space (designated "Space 1" in the lease) was $7.00 per square foot. *See* Lease Agreement (Feb. 25, 1971) ("Lease") at ¶ 3(a). Paragraph 3(c) of the Lease states:

> Tenant covenants and agrees to pay to Landlord as additional yearly rental for *Space 1* and *Space 2* commencing on the 1st day of January 1974, and continuing throughout the term and any renewals or extensions thereof, one-twelfth (¹⁄₁₂) per month of Tenant's proportionate share (Tenant square feet in *Space 1* and *Space 2* divided by building gross square feet exclusive of *Space 3*, garage, and penthouse) of any increases in annual real estate taxes and building operating expenses above these expenses for the preceding year. For the purposes of this computation, the total annual real estate taxes and building operating expenses for calendar year 1973 shall be two and 25/100 dollars ($2.25) times the gross square feet exclusive of garage and penthouse.

Plaintiff reads this language as setting the total rent per square foot each year at $7.00 plus the difference between the previous and current years' taxes and operating expenses per square foot. Thus, if taxes and operating expenses per square foot were $2.75 in 1974 and $3.00 in 1975, plaintiff would owe $7.25 per square foot in 1975.[1] Defendant, however, argues that this clause should be interpreted as "escalating," that is, that the total rent per square foot should be calculated by adding the difference between $2.25 (the 1973 level) and the current taxes and operating expenses to the base rent of $7.00 per square foot. Thus, in the example given above, the rent in 1975 would be $7.75, as opposed to $7.25, per square foot.[2]

Every year since 1974, defendants prepared for plaintiff's inspection a rent calculation based on defendants' interpretation of ¶ 3(c). *See* Defendants' Exhibit Volume at 37–171. Although plaintiff occasionally questioned some of the elements of this rent calculation, prior to the filing of this lawsuit plaintiff never questioned defendants' interpretation of ¶ 3(c). Thus, plaintiff has been on notice since at least December 3, 1974, that defendants were calculating their rent based on an "escalating" interpretation of ¶ 3(c). *See id.* at 43–49. Yet plaintiff only objected to this interpretation in 1988, over 13 years later.

---

1. $7.00 + ($3.00 − $2.75) = $7.25

2. $7.00 + ($3.00 − $2.25) = $7.75

Plaintiff and defendants agree that, even though a suit for a declaratory judgment seeks equitable relief, a suit whose underlying claim rests in breach of contract, such as this one, is subject to the District of Columbia's statute of limitations. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") at 3–4; Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defendants' Memorandum") at 20–22. Defendants do not contest plaintiff's assertion that the 12 year statute of limitations of D.C.Code § 12–301(6) applies. *See* Defendants' Memorandum at 21. Even with a 12 year statute of limitations, however, plaintiff's action is barred.

An action is barred under D.C.Code § 12–301(6) if it is brought more than 12 years "from the time the right to maintain the action accrues." The right to maintain this action accrued when plaintiff received the December 3, 1974 letter from Herbert L. Goda to Joseph F. Hintersehr, the first request for rental payments that definitively expressed defendants' interpretation of ¶ 3(c).[3] *See* Defendants' Exhibit Volume at 43–49. At that point, plaintiff could have sued for, *inter alia*, the following relief:

1) A declaratory judgment that defendants have been improperly calculating the additional rent due and owing and a determination from the court as to the proper base rent and additional rent past, present, and *in futuro* due under the Lease (including any extant Lease extensions);

2) Judgment in its favor and against defendants, jointly and severally, for all overpayments in additional rent and base rent during the Lease and any extensions thereof;

3) Such additional damages as may have accrued and/or continue to accrue; and

4) Reasonable costs and attorneys' fees.

This is the same relief plaintiff seeks in its complaint. Thus, all of the elements of plaintiff's cause of action were present in 1974, that was "the time the right to maintain the action accrue[d]" within the meaning of D.C.Code § 12–301(6), and that was over 12 years before the complaint was filed. The statute of limitations bars all of the causes of action in the complaint.

Plaintiff's analogy to suits for nonpayment of an installment obligation is inapt. In those cases, plaintiff argues, a landlord generally has a separate cause of action for each rent installment as it falls due and is not paid, and, hence, the statute of limitations must be applied individually to each of these separate causes of action. *See* Plaintiff's Opposition at 6–7. Under this theory, plaintiff's claims based on all rent payments made since May 18, 1976 (12 years before the filing of the complaint on May 18, 1988) and plaintiff's request for a declaratory judgment would not be barred. In installment cases, however, a landlord cannot sue to recover installment payments not yet due. The issue in such a case is not one of interpretation, which would govern throughout the life of the contract, but one of a single, limited breach. Thus, if a lease made it clear that a tenant must pay $300 each month in rent and the tenant refused to pay for three straight months, the landlord would have three separate causes of action. If there was a dispute about whether the lease required the tenant to pay $300 each month or $75 each week, however, there would be only one cause of action, which would accrue the first time the landlord demanded a weekly payment.

In this regard, it should be noted that there are many advantages to resolving disputes over contract interpretation, as opposed to isolated breaches of clear language, earlier in the life of a contract rather than later. Parties to longstanding agreements will often make future business plans and arrangements on the basis

3. The November 27, 1973 letter from Goda to Hintersehr did not provide notice of defendants' interpretation of ¶ 3(c) because those calculations were based on increases in taxes and operating expenses since 1973. *See* Defendants' Exhibit Volume at 38–42. Thus, plaintiff's and defendants' interpretations would produce identical rent calculations for 1974. It is only beginning with the calculations for 1975 that plaintiff's and defendants' interpretations produce different results.

of contract interpretations that have not been questioned but which, according to plaintiff's theory, could be questioned at any time during—and even after—the life of the contract. Thus, a landlord who has relied on income generated for the past 13 years and expected to be generated in the future based on a particular interpretation of an escalation clause should be able to make future plans, investments, and other business arrangements without the fear that this interpretation may one day be reversed by means of a lawsuit. In addition, resolving questions of contract interpretation sooner rather than later also increases a court's ability to assess fully and completely the parties' intent at the time of drafting. Attempting to determine the parties' intent many years after the contract was signed runs the risk, as in this case, of faded memories and even the deaths of key participants in the contract negotiations. To avoid such risks, causes of action based on contract interpretation, as opposed to situations devoid of any interpretive questions such as nonpayment of installments, should be deemed to accrue on the date on which plaintiff becomes or should become aware of the parties differing interpretations. Accordingly, plaintiff's causes of action are barred by the statute of limitation and defendants' motion for summary judgment must be granted.

■ Furthermore, even if plaintiff's complaint had been timely filed, defendants would still be entitled to summary judgment. If a contract is susceptible to more than one interpretation, a court may look to extrinsic evidence to determine the parties' intent. *See Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1091–95 (D.C.1988); *Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337, 322 A.2d 866, 874 (1974). In most cases, this extrinsic evidence will be in dispute, precluding summary judgment for either side. In some cases, however, the extrinsic evidence "is so clear that it cannot fairly be said that the material issue of intent is genuinely in dispute." *NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 684 n. 23 (D.C.Cir. 1985). In such cases, summary judgment

is appropriate "even though the ambiguity of the contract required looking beyond its four corners to determine intent." *Id.* This is such a case.

Plaintiff argues that the "plain meaning" of ¶ 3(c) is clear and supports its interpretation. On its face, however, the provision is ambiguous. Paragraph 3(c) defines the amount of "additional yearly rental" plaintiff will pay to defendant. Paragraph 3(c) does not, however, indicate how one is to interpret "additional." "Additional" could mean "in addition to the base rate of $7.00 per square foot," which would support plaintiff's interpretation. However, "additional" could just as easily mean "in addition to the yearly rental paid in the previous year," which would support defendants' interpretation.

In addition, the Lease states:

This lease together with [*inter alia*, the Letter of Intent dated July 14, 1970, and identified as Exhibit C] attached hereto and made a part hereof, contain and embody the entire agreement of the parties hereto. . . .

Lease at ¶ 37. The Letter of Intent explicitly refers to an "escalation" clause, the description of which appears to conflict directly with plaintiff's interpretation of ¶ 3(c) of the Lease. Thus, even reading ¶ 3(c) in the light most favorable to the plaintiff, ¶ 37 and the Letter of Intent that it incorporates by reference create ambiguity regarding the nature of the parties' agreement concerning "additional" rent.

Finally, ¶ 4 of the Lease twice refers to "the escalation clause." A fair reading of the Lease demonstrates that "the escalation clause" so referenced could only logically be the provision for "additional yearly rental" set out in ¶ 3(c). By referring to ¶ 3(c) as "the escalation clause," the Lease itself apparently contradicts plaintiff's purportedly "plain meaning" for ¶ 3(c). Under plaintiff's interpretation, ¶ 3(c) would not necessarily require the yearly rental to "escalate" every year. Indeed, it is quite possible that, given plaintiff's interpretation, ¶ 3(c) would cause the annual rent to *de-*

*crease* in some years.[4] Thus, plaintiff's putatively unambiguous interpretation of ¶ 3(c) is simply inconsistent with the reference in ¶ 4 to "the escalation clause." The provision for the computation of "additional yearly rental," therefore, is ambiguous and it is appropriate to determine the parties' intent based on extrinsic evidence.

■ The extrinsic evidence establishes that there is no genuine issue of material fact as to the parties' intent. It is undisputed that plaintiff had been paying rent to defendants for over 13 years based on defendants' interpretation of ¶ 3(c). As our Court of Appeals has held, "[t]he historical interpretation given to a contract by the parties is strong evidence of its meaning." *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1150 (D.C.Cir.1984). That defendants' annual rental notices clearly identified the means by which "additional yearly rental" was calculated cannot be questioned. *See, e.g.*, Defendants' Exhibit Volume at 44, 50, 54, 56 (calculating annual rental by subtracting $2.25 per square foot from the current or projected operating expenses and adding this amount to the "base rent"). These rental notices were not complicated financial documents. The method of calculation was not concealed. The cover letters for these notices clearly identify the method of rental calculation, are generally only two pages long, and are quite simple to understand. If the parties' intent had been as plaintiff's argue, plaintiff certainly would have complained about defendants' method of calculation. Rather, plaintiff acquiesced for over 13 years. Thus, the parties' historical interpretation overwhelmingly supports defendants' interpretation of ¶ 3(c).

In addition, defendants' version of the parties' intent is supported by the fact that plaintiff's interpretation of ¶ 3(c) would produce nonsensical results that no reasonable landlord would have been likely to intend. As demonstrated above, *see supra* note 4, plaintiff's interpretation could result in decreasing annual rents. If the operating expenses and real estate taxes increase by an equal amount every year, plaintiff's interpretation would produce a constant rent. Plaintiff has provided no rationale to explain why a reasonable landlord would agree to such a provision given the reasonable expectation of increasing expenses. Nor has plaintiff explained why defendants would provide for escalating rents for all tenants at 1711 New York Avenue except plaintiff. *See, e.g.*, Plaintiff's Opposition at Exhibit A. The parties could not have intended such an illogical result. *See Makofsky v. Cunningham*, 576 F.2d 1223, 1229–30 (5th Cir.1978); *P.V. Properties, Inc. v. Rock Creek Village Assocs. Ltd. Partnership*, 77 Md.App. 77, 549 A.2d 403, 406 (1988); *Canaras, supra*, 322 A.2d at 877. As the court held in *Moncrief v. Martin Oil Serv., Inc.*, 658 F.2d 768, 773 (10th Cir.1981):

> where an agreement can fairly be said to have two constructions, that which is fair or rational and of a character that prudent men would naturally enter into is to be preferred to a construction that is inequitable or unusual or such that reasonable men would not likely enter into it.

In the absence of any rationale for the parties to provide for a "non-escalating" rent, as alleged by plaintiff, there is no genuine issue of material fact. Thus, even if plaintiff's claims were not barred by the statute of limitations, defendants would still be entitled to summary judgment.

Accordingly, the accompanying Order will grant defendants' motion for summary judgment and deny plaintiff's motion for partial summary judgment.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 20th day of April, 1989, hereby

ORDERED: that defendants' motion for summary judgment should be, and is hereby, GRANTED; and it is further

---

**4.** To take the example used above, *see supra* at 2, according to plaintiff's interpretation, the annual rent for 1973 would be the base rent of $7.00, the rent for 1974 would be $7.50 ($7.00 + ($2.75 − $2.25)), and the rent for 1975 would be only $7.25 ($7.00 + ($3.00 − $2.75)).

**30**

ORDERED: that plaintiff's motion for partial summary judgment should be, and is hereby, DENIED.