Reversed and Remanded and Majority and Concurring Opinions filed June
13, 2002









Reversed and Remanded and Majority and Concurring
Opinions filed June 13, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00196-CV

____________

 

T.F.W. MANAGEMENT, INC. and TIMOTHY
F. WILLIAMS, Appellants

 

V.

 

WESTWOOD SHORES PROPERTY OWNERS
ASSOCIATION, Appellee

 



 

On Appeal from the 411th District Court

Trinity County, Texas

Trial Court Cause No. 17,734-A

 



 

M A J O R I T Y    O P
I N I O N

Appellants T.F.W. Management, Inc. (AT.F.W.@), and Timothy F. Williams appeal a
summary judgment ordering T.F.W. to render an accounting of the assessment,
collection, and expenditure of all fees appellee Westwood Shores Property
Owners Association (Athe Association@) turned over to T.F.W. and its
predecessor in interest.  We reverse and
remand.








FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1972, BRL Joint Venture, later known as Westwood
Shores, Inc. (“the Developer”), began developing a number of subdivisions
generally known as Westwood Shores.  The
development eventually comprised nineteen subdivisions, centered around a country club complex, the Westwood Shores Country
Club, which was initially owned by the Developer.  The County Club included a golf course,
practice facility, clubhouse, swimming pool, tennis courts, and parking areas.

The Reservations, Restrictions, and Covenants (“RR&Cs”) of the subdivisions provided each lot was
subject to a maintenance charge, which was to be used to create a fund known as
the “Maintenance Fund.”  The RR&Cs also initially provided, “The maintenance charges
collected shall be paid into the Maintenance Fund to be held and used for the
benefit, directly or indirectly, of the Subdivision; and such Maintenance Fund
may be expended by the Developer for any purposes which, in the judgment of the
Developer will tend to maintain the property values in the Subdivision.” 

Under the heading of “Recreational Facilities Membership,”
the RR&Cs initially provided, “There shall be
included in the maintenance charge levied upon each lot the sum of $5.00 per
month which amount shall be paid by the Developer to the entity which owns the
golf course, marina, club house, and other recreational facilities.”[1]  When the Developer began the nineteenth
subdivision in 1994, the recreational membership fee was $17.78 per month.  That recreational membership fee, as well as
the other portions of the maintenance charge, was secured by a vendor=s lien reserved in the deed from the
Developer to the purchaser of each lot.








On October 31, 1996, the Developer sold the Country Club to
T.F.W.  An operating agreement, executed
the same day provided in part:

[The Developer] and [the Association] acknowledge and
agree that TFW shall have the unrestricted right to assess, change, collect,
receive, expend and administer, in its sole discretion, that portion of the
maintenance charge referred to in the [RR&Cs]
(the “Maintenance Charge”) that relates to membership in the Recreational
Facilities (the ARecreational Charge@)
subject to the rights, duties and limitations within the [RR&Cs].  WSI and [the Association] shall have no right
to participate in setting the amount of the Recreational Charge nor to exempt any person, entity, or lot from the
Recreational Charge without the consent of TFW which may be withheld in its
sole discretion.  The Recreational Charge
shall, not withstanding [sic] any change in amount, remain secured by the
vendor=s lien referred to in the [RR&Cs].


 

. . . In the event of a delinquency regarding payment
of the Maintenance Charge that remains outstanding for more than sixty (60)
days and collection efforts are not being diligently pursued, TFW shall have
the right, but not the obligation, to enforce the payment of the delinquent
Maintenance Charge in the name of and on behalf of [the Association],
including, without limitation, by institution of foreclosure proceedings.

 

The president of the Association signed the agreement.

Association By-Laws, also approved October 31, 1996, gave the
Association power to do whatever it deemed Anecessary or desirable@ to maintain subdivision property “in
neat and good order.”  Nevertheless,
nothing in the paragraph containing this provision,
conferred “any right on the Association to take any action with respect to the
recreational facilities owned by the Owner of the Recreational Facilities,
which shall be owned, operated, managed, and maintained solely by the Owner of
the Recreational Facilities.”








The Developer transferred control of the Association on
December 9, 1996.  Before that date, no
Association members, other than the initial Trustees, were entitled to a vote,
and the business of the Association was managed by the Board of Trustees.[2]

On January 11, 1999, the Association wrote Williams
requesting an accounting: “Inasmuch as the POA provides collections,
allocations and delinquency information to the Country Club, on behalf of the
owners we request that the Country Club provide an accounting to show the
owners how their assessment money is being used.”  Williams did not respond, and the Association
repeated the request on January 22.  On
January 28, Williams wrote:

In reference to how the dues are spent, we spend a
percentage of each $31.25 a month each lot owner pays on the following: golf
course equipment, golf course payroll, golf course supplies, pro shop payroll,
administrative overhead, clubhouse upkeep, insurance, taxes, capital
improvements, debt service, charitable contributions, swimming pool
maintenance, tennis court maintenance, housekeeping, etc. and several other
items.

 

In March 1999, the Association, through its attorney, wrote
Williams, making one final demand for an accounting.  The Association requested detailed
information and documentation for calendar years 1997 and 1998.  The Association based its request on the
reference to the RR&Cs in the Operating Agreement
and on an implied duty to furnish an accounting, “pursuant to well-settled case
law.”  Williams responded through
counsel, refusing to provide the requested information and arguing T.F.W. had
no express, implied, or fiduciary duty to provide the information.








The Association sued T.F.W. (1) for an accounting, (2) for
declaratory judgment seeking a “determination of its legal relations,
responsibilities and rights with regard to the obligation of T.F.W. to expend
maintenance charges in good faith to maintain or improve the property of the
Subdivision” and “to define the obligations with which T.F.W. is charged
concerning the operation of the recreational facilities for the benefit of the
Subdivision and the request to account for its action to the residents,” and
(3) for breach of contract regarding maintenance of water in Westwood Lake.[3]  T.F.W. answered with a general denial and
counterclaimed for (1) breach of contract relating to the recreational charges
and (2) trespass related to installation of utilities on the golf course.

The Association moved for partial summary judgment on its action
for an accounting. It argued (1) a fiduciary duty exists between T.F.W. and the
Association, and (2) the express terms of the RR&Cs
create an implied contractual duty for T.F.W. to account for the expenditure of
the funds collected from the Association’s members.  In support of its motion, the Association
provided, among other items, the RR&Cs from the
nineteen subdivisions, correspondence between the Association and Williams
regarding the Association’s request for an accounting, and T.F.W.’s
responses to the Association’s request for production of T.F.W.’s
financial records.  T.F.W. responded,
arguing (1) it has no express or implied duty to account under the terms of the
documents governing the parties’ relationship, and (2) no fiduciary duty exists
between the parties.  In support, it
attached, among other items, Williams’ affidavit and the Association=s Amended By-Laws.

Without stating the grounds, the trial court granted the
Association’s motion and ordered T.F.W. to render an accounting.  The Association then filed a motion to sever
and abate the remaining causes of action. 
The trial court ultimately severed the remaining causes of action and
rendered final judgment ordering an accounting in the case now before this
court.  

DISCUSSION

Nature of Case and Issues Presented

This case concerns an order for an accounting based on
alleged contractual obligations and on principles of equity B not an accounting as a remedy sought
in conjunction with another cause of action. 
See Butler v. Cont=l Airlines, Inc., 31 S.W.3d 642, 646 n.4 (Tex. App.CHouston [1st Dist.] 2000, pet.
denied) (noting parties stipulated plaintiff=s claim for an accounting was remedy
and not cause of action); see also Michael v. Dyke, 41 S.W.3d 746, 754
(Tex. App.CCorpus Christi 2001, no pet.) (observing action for accounting may be suit in equity, or it
may be particular remedy sought in conjunction with another cause of
action).  The Association=s breach of contract claim addressed
the water level of the lake, not T.F.W.=s financial management of the
recreational facilities.  The Association
admits it needs the accounting to determine whether there has been a
breach of contract.

Nevertheless, under the trial court=s order, a court-appointed auditor is
to Arender an accounting of the
assessment, collection, and expenditure of all fees turned over to [T.F.W.] and
its predecessor in interest by [the Association] on behalf of its members since
October 1, 1996.@  The auditor is to
have Aaccess to all relevant books,
records, accounts, and other documents, as determined by the auditor, in [the
parties=] possession.@ 
In short, the Association has not alleged any wrongdoing by T.F.W. in
relation to its financial records, and yet the trial court=s order subjects T.W.F. to an
intrusive and potentially expensive audit.








Although T.F.W. presents six issues for review, it presents
essentially three arguments.[4]  First, it contends the Association does not
have a contractual right to an accounting. 
Second, it contends the Association cannot rely on a theory of a
fiduciary relationship to obtain an accounting. 
Third, it argues the Association cannot meet the standards for an
equitable accounting claim, specifically that the Association cannot show there
is no adequate remedy at law.  Relying on
case law from foreign jurisdictions, the Association responds T.F.W. has a
fiduciary duty and a contractual obligation to render an accounting to the
Association.  It also argues its original
and unsuccessful attempt to obtain information through discovery establishes
there is no adequate remedy at law. 
Because we conclude the Association cannot establish a contractual or
fiduciary duty entitling it to an accounting, we hold the trial court erred in
granting the Association’s motion for summary judgment.

Summary Judgment Standards

The movant for summary judgment has the burden to show there
is no genuine issue of material fact and it is entitled to judgment as a matter
of law.  Nixon v.
Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  When deciding whether there is a disputed
material fact issue precluding summary judgment, the appellate court must take
as true all evidence favorable to the non‑movant.  Id. at 548-49.  The reviewing court must indulge every
reasonable inference in favor of the non‑movant and resolve any doubts in
its favor.  Id.
at 549.








A plaintiff moving for summary judgment must conclusively
prove all essential elements of its claim. 
See MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986); Geiselman v. Cramer Fin. Group, Inc., 965
S.W.2d 532, 535 (Tex. App.CHouston [14th Dist.] 1997, no
writ).   Because the propriety of summary
judgment is a question of law, we review the trial court’s decision de novo.  See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).  If, as here, the trial court grants a motion
for summary judgment without stating the grounds on which it relied, we must
affirm the summary judgment if any ground argued in the motion was sufficient.  Star‑Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995); Blan v. Ali,
7 S.W.3d 741, 747-48 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

Standards Applicable to a Suit for an Accounting

A suit for an accounting is generally founded in equity.  Southwest Livestock & Trucking Co. v.
Dooley, 884 S.W.2d 805, 809 (Tex. App.CSan Antonio 1994, writ denied)
(citing Palmetto Lumber Co. v. Gibbs, 124 Tex. 615, 80 S.W.2d 742, 748
(1935)).  To be entitled to an
accounting, a plaintiff usually must have a contractual or fiduciary
relationship with the party from which the plaintiff seeks the accounting.  See Hunt Oil Co. v. Moore, 656 S.W.2d
634, 642 (Tex. App.CTyler 1983, writ ref=d n.r.e.) (holding
mineral interest grantee, who acquired his interest after oil and gas lease
between grantor lessor and oil company terminated, was
not entitled to accounting from oil company when there was no contractual or
fiduciary relationship between parties).

An equitable accounting is proper when the facts and accounts
presented are so complex adequate relief may not be obtained at law.  Hutchings v. Chevron U.S.A., 862
S.W.2d 752, 762 (Tex. App.CEl Paso 1993, writ denied) (citing Richardson
v. First Nat=l
Life Ins. Co., 419 S.W.2d 836, 838 (Tex.
1967)).  When a party
can obtain adequate relief at law through the use of standard discovery
procedures, such as requests for production and interrogatories, a trial court
does not err in not ordering an accounting. 
See Hutchings, 862 S.W.2d at 762.[5]

No Implied Contractual Term under Texas Law  

In its motion for summary judgment, the Association
acknowledged there is no express contractual provision requiring T.F.W. to
account to the Association.  Instead, the
Association argues the operating agreement and the deed restrictions create an
implied duty to account.  In support, the
Association relies almost exclusively on a case from the Maryland Court of
Special Appeals, P.V. Properties, Inc., v. Rock Creek Village Associates
Limited Partnership, 549 A.2d 403 (Md. Ct. Spec. App. 1988).[6]  In P.V. Properties, the court held “a
tenant in a shopping center is entitled to an itemized listing of common area
maintenance expenses where the lease is silent in that respect and the landlord
is unwilling to provide the desired information.”  Id. at 404.  As explained by the court, under the lease,
the “landlord’s right to charge the tenant for common area expenses is a
limited one.”  Id.
at 407.  Specificially,








The tenant has the right under the lease to be charged
only for certain specific expenses incurred by the landlord for maintenance of
the common areas . . . .  Section 17.03
[of the lease] clearly delineates the charges for which the landlord can seek
reimbursement from the tenant.  The
purpose in outlining these charges is to ensure that the landlord does not
include other charges, such as capital improvements, to the tenants as part of
their common area maintenance charges. 
Section 17.04 requires the landlord to provide the tenant with an annual
statement reflecting its Atotal actual costs@ of
maintenance. 

 

Id. at 407.

The P.V. Properties court concluded “the two sections
read together, require the landlord to provide the tenant with an annual
statement which outlines in detail the type and amount of each expense it
incurred.”  Id.
at 407-08.  The court also
observed the requirement to itemize the common area maintenance expenses could
be “implied from the terms of the lease."  Id. at 408.

Unlike the lease in P.V. Properties, the operating
agreement in the present case gives T.F.W. Ain its sole discretion,” an “unrestricted
right to assess, change, collect, receive, expend and administer” the
recreational facilities charge.  Although
the operating agreement subjects that discretion to Athe rights, duties and limitations
within the [RR&Cs],@ the Association=s own by-laws provide the
recreational facilities are to “be owned, operated, managed, and maintained
solely by the Owner of the Recreational Facilities.”  Finally, the RR&Cs
provide the recreational facilities charge “is to be paid . . . to the entity
which owns the [recreational facilities],” thereby differentiating that charge
from other portions of the maintenance charge, which apparently remain in the
maintenance fund.  The contractual
provisions at issue in the present case are distinguishable from those in P.V.
Properties.








The law on which the P.V. Properties court relied to
imply a requirement to itemize is distinguishable from Texas law.  The P.V. Properties court observed, “The
obligation of good faith and cooperation implied in every contract gives
rise to the implied requirement on the part of the landlord to disclose its
cost data and the basis upon which the tenant's common area maintenance
liability was computed.”  Id.
(emphasis added).  Texas, however, has
specifically rejected the implication of a general duty of good faith and fair
dealing in all contracts.  City of Midland v. O=Bryant,
18 S.W.3d 209, 215 (Tex. 2000).

The Association has cited no Texas cases that imply, in a
contract otherwise silent on the matter, a contractual provision for an
accounting under facts similar to those in the present case.  We have found none.  Accordingly, we will not imply such a requirement
here.  See Emscor
Mfg., Inc. v. Alliance Ins. Group, 879 S.W.2d 894, 910 (Tex. App.CHouston [14th Dist] 1994, writ
denied) (stating “[i]t is not for an intermediate appellate court to create new
causes of action”); see also Hughes Drilling Fluids, Inc., a Div. of Hughes
Tool Co. v. Eubanks, 729 S.W.2d 759, 762 (Tex. App.CHouston [14th Dist.] 1986, writ
granted) (stating decision to extend right of recovery in loss of parental
consortium cases lies with legislature or supreme court), set aside pending
settlement, 742 S.W.2d 275 (Tex. 1987). 

No Limited Fiduciary Duty under Texas Law

As this court explained in Chapman
Children=s Trust v. Porter & Hedges, L.L.P., 

There are two types of fiduciary relationships.  The first is a formal fiduciary relationship
in which a duty arises as a matter of law, including those between an attorney
and client, a principal and agent, a trustee and beneficiary, and partners in a
partnership. . . .  The second is an
informal fiduciary relationship, which may arise “from a moral, social,
domestic or purely personal relationship . . . called a confidential
relationship.”

 

32 S.W.3d 429, 439 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied) (citations omitted).

The Association does not contend a formal fiduciary
relationship exists between it and T.F.W. 
As it did in its motion for summary judgment, the Association argues a
limited fiduciary relationship exists because special confidence is reposed on
one side and there is resulting domination and influence on the other.

In support, the Association cites Richardson.  In Richardson, the supreme
court explained the equitable relief of an accounting may be granted
when there is a close fiduciary relationship.  419 S.W.2d at 838.  The issue in Richardson, however, was
whether the district court had jurisdiction over a suit in which the plaintiff
sought judgment in an amount less than the jurisdictional limit of the district
court.  Id.  The supreme court
observed the only way it could sustain the district court=s jurisdiction would be to hold the
suit was one in equity, and the supreme court declined to do so.  Id. at 838-39.

The Association also cites several cases dealing with the
criteria for establishing the existence of an informal fiduciary or
confidential relationship.  See, e.g.,
Pope v. Darcey, 667 S.W.2d 270, 275 (Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.) (stating confidential
relationship exists when one person has special confidence in another to extent
that parties do not deal with each other equally, either because of dominance
on one side or weakness, dependence, or justifiable trust on the other; and
holding fiduciary relationship existed between attorney representing estate and
heir of deceased from whom attorney sought to purchase heir=s 1/5th share of inheritance);
Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 508-09 (Tex. 1980)
(stating Aaccepted rule@ that, when trust is reposed and
substantial benefits are gained, equity will recognize beneficiary of
transaction is a fiduciary and under fiducial
obligation of establishing fairness of transaction to his principal; and
holding fiduciary relationship existed between administrator of decedent=s estate and decedent=s nephew, who had accepted transfers
by his aunt to him as joint tenant with survivorship rights); Fitz-Gerald v. Hull, 237 S.W.2d 256, 261-62
(Tex. 1951) (discussing principles underlying imposition of constructive trust
in context of case involving joint-adventurers,).

The Association, however, cites no Texas cases creating a
fiduciary duty to provide an accounting under facts similar to those in the
present case, and we have found none. 
Accordingly, we decline to create such a new duty here.  See Emscor Mfg.,
879 S.W.2d at 910 (stating, “It is not for an intermediate appellate court to
create new causes of action”); see also Hughes Drilling Fluids, 729
S.W.2d at 762 (stating decision to extend right of recovery in loss of parental
consortium cases lies with legislature or supreme court).

CONCLUSION

Because we conclude there is no implied contractual,
or limited fiduciary, duty for T.F.W. to provide the Association with an
accounting, we sustain T.F.W.’s issues two and three,
which directly raise these questions. 
Because of our resolution of issues two and three, we reverse the
judgment in favor of the Association on these grounds and need not address
T.F.W.’=s remaining issues.

We reverse the judgment of the trial court and remand the
case for further proceedings consistent with this opinion.

 

 

/s/        John S. Anderson

Justice

 

 

Judgment rendered
and Majority and Concurring Opinions filed June 13, 2002.

Panel consists of Chief Justice Brister and Justices
Anderson and Frost.  (Brister, C.J., concurring).  

 

Publish C Tex.
R. App. P. 47.3(b).








Reversed and Remanded and Majority and Concurring
Opinions filed June 13, 2002.

 




 
 
 
 
 
 
 




 

 

 

 

 

 

 

In
The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00196-CV

____________

 

T.F.W. MANAGEMENT, INC. and TIMOTHY F. WILLIAMS,
Appellants

 

V.

 

WESTWOOD SHORES PROPERTY OWNERS ASSOCIATION, Appellee

 



 

On Appeal from the 411th District Court

Trinity County, Texas

Trial Court Cause No. 17,734-A

 



 

C O N C U R R I N G   O P I N I O N

I agree with the Court=s disposition, and its reticence to
rewrite the homeowners= contracts or create a new fiduciary
duty to accommodate them.  But because of
the potential abuse in the type of development plan used in this case, I would
leave some room to address these questions further in the future, and decide
this case on another ground.








The homeowners here are being taxed without
representation.  The privately-owned
corporation that manages the golf club has the right to assess any maintenance
charge it chooses, and payment is secured by a vendor=s lien on each home that may be
foreclosed if the charge is not paid. 
The homeowners never agreed to this; the developer made the arrangement
on behalf of the association while he still controlled it.  Perhaps the homeowners might have foreseen
the possibility from the deed restrictions, but only if they were lawyers
trained to assume that every contractual clause would be taken to its most
logically horrible conclusion.

            Nevertheless,
the homeowners do not allege exorbitant assessments or a spate of foreclosures
in this case.  Instead, they allege
disagreements with how the golf club is being run, and seek an equitable
accounting to confirm or allay their suspicions.

But an equitable accounting is proper only when normal discovery
procedures are inadequate.  Hutchings
v. Chevron U.S.A., 862 S.W.2d 752, 762 (Tex. App.CEl Paso 1993, writ denied).  There is no such showing in this record.  The Court correctly concludes that the
homeowners= discovery requests were impossibly overbroad, and the trial court jumped over them to the
accounting remedy.  This was the error.

Whether we should imply a right to an accounting or some
other term in these parties= relationship is a more complicated question.  While courts rarely imply terms in a
contract, we may do so when the parties so clearly understood a matter they
deemed it unnecessary to express it, or a term must be implied to effectuate
the full purpose of the contract.  See
Fein v. R.P.H., Inc., 68 S.W.3d 260, 268 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  The structure of this
relationship and potential loss of one=s home might require us to reconsider
today=s conclusion.  But the facts in our record do not warrant
any extraordinary intervention here. 
Thus, I agree the trial court=s judgment should be reversed and
remanded for further proceedings.

 

/s/        Scott Brister

Chief Justice

 

Judgment rendered
and Majority and Concurring Opinions filed June 13, 2002.

Panel consists of
Chief Justice Brister and Justices Anderson and Frost.

Publish C Tex.
R. App. P. 47.3(b).











[1]  Because the
Developer was required to pay the recreational membership fee directly to the
Country Club owner, and not to the Maintenance Fund, the RR&Cs
for the eighteenth and nineteenth subdivisions, dated 1986 and 1994, read:  “Except for the recreational charge . . . ,
the maintenance charge collected shall be paid into the Maintenance Fund. . . .”





[2]  According to
the By-Laws, “Each initial Trustee and their successors named in the Articles
of Incorporation of the Association shall be a member so long as any Building
Sites remain Unsold by the Developer unless sooner terminated by the Developer
in its sole and absolute discretion.”





[3]  The
Association also sued Williams individually because T.F.W.’s
charter had been revoked.  Although the trial
court did not order Williams to account to the Association, he joined in the
notice of appeal.





[4]  T.F.W. lists
the following six issues: (1) whether ATFW, a
private Texas for profit corporation, must account to the [Association] for the
assessment, collection, and expenditure of the recreational charges required to
be paid to TFW for the Westwood Shores lot owners= access
to TFW=s recreational facilities and amenities@; (2) whether Athe
Operating Agreement between TFW and the POA [Property Owners= Association] or the Reservations, Restrictions, and
Covenants [RR&Cs] for the Westwood Shores
Development require TFW to account for the recreational charges@; (3) whether ATFW owes
a fiduciary duty to the [Association]@; (4)
whether Athe trial court erred by considering the purported
existence of a fiduciary relationship between TFW and the [Association] when
the [Association] did not plead the existence of a fiduciary relationship or
that it was entitled to an accounting on the basis of the existence of a
fiduciary relationship@; (5) whether the Association Aestablished as a matter of law that there was no
adequate remedy at law to support an equitable action@; and (6) whether the Association Aestablished as a matter of law, that there were no
genuine issues of material fact precluding summary judgment on its accounting
claim.@  In relation to
issue six, T.F.W. does not explain what disputed fact issues exist in the
Association=s suit for an accounting.





[5]  Although the
Association points to T.F.W.’s refusal to respond to
its requests for production and interrogatories as evidence it has no adequate
remedy a law, the Association=s requests were broad, seeking, for example, (1) “[a]ny and all financial books and records of the Corporation
showing all receipts, expenditures, disbursements, assets, liabilities, profits
and losses of the Corporation,” (2) “[a]ny and all
financial records necessary for the recording of the business and affairs of
the Corporation,” (3) “[a]ny and all financial
documents and/or information [the Corporation] is required to maintain pursuant
to Texas law concerning the operation of the Corporation,@ (4) A[a]ny and all balance sheets
and profit and loss statements of the Corporation,@ (5) A[a]ny and all documentation
and/or other tangible media evidencing any outstanding notes which the
Corporation owes to any individual entity,@ (6) A[a]ny and all documentation
and/or other tangible media evidencing any outstanding notes which are payable
to the Corporation by any individual entity,@ (7) A[a]ny and all documentation
and/or other tangible media evidencing the current standing of the corporate
status of the Corporation,@ and (8) A[a]ny and all documentation and/or other tangible media
evidencing any business ventures other than the Westwood Shores Country Club of
the Corporation, its officers, directors or any Insider or principal.@





[6]  The
Association also cites two treatises on contracts and the following two Dallas
cases:  Cockrell v. Republic Mortgage
Ins. Co., 817 S.W.2d 106 (Tex. App.CDallas 1991, no writ), and Dedier
v. Grossman, 454 S.W.2d 231 (Tex. Civ. App.CDallas
1970, writ ref=d n.r.e.).  In Cockrell,
the court observed, AAbsent an Arnold >special
relationship,= the duty to act in good faith is contractual in
nature and its breach does not amount to an independent tort.@  817 S.W.2d at 116 (referring to Arnold v. Nat=l County Mut.
Fire Ins. Co., 725 S.W.2d
165, 167 (Tex. 1987)). 
In Dedier, the court stated, AAbsent fraud or mistake the court will not make a new
contract for the parties or add to, modify, or change in any particular the
agreement that they have made.@  454 S.W.2d at 235.